13 CIV 8022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRADLEY BEENEY,

      *Plaintiff*,

v.

INSIGHTEC, INC.,
AMIT SOKOLOV, *and*
NEHA DHAWAN,

      *Defendants*.
------------------------------------------------------------X

COMPLAINT

RECEIVED NOV 12 2013 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Bradley Beeney, by counsel, The Harman Firm, PC, alleges as follows:

## PARTIES AND NATURE OF ACTION

1. In this employment discrimination matter, Plaintiff Bradley Beeney ("Plaintiff" or "Mr. Beeney"), a gay man with a domestic partner, was hired on merit, and then harassed and terminated after his new employer and colleagues, Defendants, learned that he is gay and that he has a same-sex domestic partner.

2. Defendants also failed to pay Mr. Beeney premium overtime in violation of the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201–19, and the New York Labor Law ("N.Y. Lab. Law") §§ 2, 190–96, 215, 650–51, and 663(1). Mr. Beeney's position at Defendant InSightec did not require independent judgment, he did not supervise any person(s), and he worked approximately fifty to sixty (50–60) hours per week and was not compensated for the time he worked in excess of forty (40) hours per week.

3. At all times relevant hereto, Plaintiff Bradley Beeney was and is a resident and citizen of the City, County, and State of New York, who was subjected to discrimination due to

his sexuality and domestic partnership status and unlawfully and maliciously terminated from his job.

4. At all times relevant hereto, Mr. Beeney was and is a member of two (2) protected classes under the N.Y.C. ADMIN CODE §§ 8-101–31 (New York City Human Rights Law, hereinafter "NYCHRL"):

(i) He was and is a gay man, based on sexual orientation, NYCHRL § 108-7(1)(a); and

(ii) He was and is in a domestic partnership with another male, based on partnership status, N.Y.C. ADMIN. CODE § 3-240(a) and the NYCHRL §§ 8-102(24) and 8-107(1)(a).

5. Upon information and belief, at all times relevant hereto, Defendant InSightec, Inc. ("InSightec") is an entity organized and existing under the laws of the State of Delaware, and is registered to do business in the State of Texas with a principal place of business in the City and County of Dallas, State of Texas.

6. Upon information and belief, at all times relevant hereto, Defendant Amit Sokolov ("Sokolov") was and is a citizen of Israel.

7. Upon information and belief, at all times relevant hereto, Defendant Sokolov was employed in the management position of Global Clinical Applications Manager by Defendant InSightec; he was Mr. Beeney's direct supervisor and participated in the decision to unlawfully terminate him from his employment with Defendant InSightec.

8. Upon information and belief, at all times relevant hereto, Defendant Sokolov had the power to hire and fire InSightec employees, to supervise, discipline and control InSightec

employee work schedules, and to directly supervise other individuals with these responsibilities, to determine InSightec employee rates of pay and to maintain InSightec employment records.

9. Upon information and belief, at all times relevant hereto, Defendant Neha Dhawan ("Dhawan") was and is a citizen and resident of the State of Texas.

10. Upon information and belief, at all times relevant hereto, Defendant Dhawan was employed as a Clinical Engineer by Defendant InSightec; she was a peer colleague of Mr. Beeney, required to directly manage, supervise and oversee Mr. Beeney's orientation and training at InSightec and participated in the decision to unlawfully terminate him from his employment with Defendant InSightec.

11. Upon information and belief, at all times relevant hereto, Defendant Dhawan had the power to hire and fire InSightec employees, supervise, discipline and control InSightec employee work schedules or directly supervise person(s) responsible for same, determine InSightec employee rate of pay and/or maintain InSightec employment records.

12. Defendants' actions in failing to support Mr. Beeney during his employment, including discriminating against, and ultimately terminating Mr. Beeney, were and are unlawful misconduct under the NYCHRL.

13. Defendant InSightec also caused Mr. Beeney to incur substantial expenses in reliance on his continued employment with InSightec.

14. As a result of Defendants' discriminatory conduct, Mr. Beeney incurred financial damages and suffered severe emotional damage and distress.

15. Defendants payment practice with respect to Mr. Beeney properly in violated the FLSA and N.Y. LAB. LAW.

## VENUE AND JURISDICTION

16. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, in that:

    (i) Plaintiff is a resident and citizen of the City, County and State of New York;

    (ii) Upon information and belief, Defendant InSightec is an entity organized and existing under the laws of the State of Delaware with a principal office in the City and County of Dallas, State of Texas;

    (iii) Upon information and belief, Defendant Sokolov is a citizen of Israel, and temporarily resides in the City and County of Dallas, State of Texas;

    (iv) Upon information and belief, Defendant Dhawan is a citizen and resident of the City and Country of Dallas, State of Texas; and

    (v) The amount in controversy exceeds the requisite amount of seventy-five thousand dollars ($75,000).

17. Venue is proper in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

## JURY DEMAND

18. Plaintiff respectfully requests a jury trial.

## STATEMENT OF FACTS

19. InSightec is in the business of manufacturing and selling globally advanced technological equipment that treats non-invasively (by use of laser devices/high frequency

ultrasound waves under magnetic resonance imaging ("MRI") guidance) human conditions such as uterine fibroids, bone metastases and some neurological disorders.

20. Upon information and belief, the procedures can be life threatening if not performed precisely, and it takes a clinician at least six (6) months to learn to be capable of training physicians and/or hospital staff to use the particular device.

21. Plaintiff is an engineer with a background in MRI and radiology.

22. Given Plaintiff's background and that his reading knowledge of the technology produced by InSightec, in about December 2012, Plaintiff responded to an ad InSightec had posted on LinkedIn for a Clinical Engineer.

23. Plaintiff began communication via email with Dhawan regarding the Clinical Engineer position; they had an initial telephone interview in late December 2012.

24. Dhawan, also a Clinical Engineer with InSightec, would be Plaintiff's counterpart in the InSightec's Dallas office and responsible for Plaintiff's training while he learned the company's products and services.

25. Plaintiff had a subsequent telephone interview with Defendant Sokolov from Israel, who also would be responsible for training Plaintiff in InSightec's products and services and to whom Plaintiff was to report. Upon information and belief, Plaintiff had another telephone interview with Dhawan shortly after his telephone interview with Sokolov.

26. Although the individual Defendants mentioned to Plaintiff the possibility of relocation, the each represented that InSightec also supported employees working remotely; it has remote employees on most continents as it has global sales.

27. InSightec eventually made Plaintiff's moving to Texas a condition of his employment.

28. The parties agreed that if Plaintiff were hired, he would be required to travel to Haifa, Israel for approximately three to four (3–4) weeks for training.

29. In late January 2013, Plaintiff interviewed in-person in Dallas, Texas with Dhawan.

30. Later that day, Plaintiff interviewed with Sokolov via Skype form InSightec's Dallas office.

31. In and around mid-February 2013, Plaintiff received via email a hire letter from InSightec for employment as a Clinical Application Engineer, to be located in the Dallas office as part of its Clinical applications team, which he signed the next day and returned to Haya Zarko, VP Human Resources, to accept the position.

32. InSightec's hire letter stated that his annual starting salary would be sixty-six thousand dollars ($66,000).

33. Defendant Dhawan also represented to Plaintiff that if he spent one (1) year as a first-year engineer, he could thereafter move into sales and thereby double his salary.

34. Due to Defendants' representations, Plaintiff left a role with a similar but much larger corporation where he earned a base salary of approximately one hundred thousand dollars ($100,000) *per annum* and bonus of approximately twenty-five thousand dollars ($25,000) *per annum*.

35. In late February 2013, Plaintiff traveled to Texas for his one-week (1-week) on-site introduction and orientation.

36. During that week, Plaintiff met with InSightec's human resources and benefits manager, Patricia Ward (aka "Pat Ward").

37. Ms. Ward instructed Plaintiff to use InSightec's Dallas office as his place of residence for payroll purposes because she did not want to have to comply with New York laws pertaining to employees.

38. Ms. Ward also stated that since Plaintiff would be moving to Texas within a few months, using a New York address would present too much work for her.

39. Ms. Ward also stated that all accrued vacation time became Plaintiff's immediately.

40. During that first week in the Dallas office, Defendant Dhawan reminded Plaintiff that he would need to be in Israel for several weeks for critical instruction regarding his new job.

41. Dhawan asked Plaintiff several times when he could move to Dallas. Plaintiff informed her that he would move around the time that his lease ended (April 30, 2013).

42. During that first week in the Dallas office, Plaintiff did not conceal his sexual orientation as a gay man when working with Dhawan. She asked him about his personal life, if he was married and/or had children, to which he responded "no."

43. During his visit to Dallas, Plaintiff received text messages while his mobile device was in view of Dhawan from his partner, such as "I miss you", which evidenced that he was a gay man in a relationship with another man.

44. Thereafter, Defendants' attitude towards Plaintiff changed. Defendants thereafter alienated Plaintiff and refused to facilitate his teamwork position and training with the company's devices and services to be offered to its clients.

45. Within a month of beginning work, while Plaintiff was working remotely from his New York City apartment, he was prevented from interaction with the corporation's Israel team altogether.

46. During March 2013, Plaintiff continued to work remotely from New York City on projects directed by Dhawan, working approximately fifty to sixty (50–60) hours per week.

47. While Defendants previously had stated that it would take Plaintiff at least six (6) months of on-site training with mentors to then meet with clients on his own, Dhawan suddenly expressed that Plaintiff was expected to immediately understand the technology.

48. In response, Plaintiff continued to request more information from Defendant Dhawan since they were dealing with human lives and accuracy was essential, which inquiries seemingly annoyed her.

49. During Plaintiff's remote work, Dhawan sent him many tasks to complete with little to no instruction or guidance, and which Defendants had never trained him to do.

50. Plaintiff continued working fifty- to sixty-hour (50- to 60-hour) weeks on projects with which Dhawan refused to assist.

51. At Dhawan's instruction, Plaintiff averaged approximately fifteen (15) hours of overtime per workweek at an overtime rate of forty-eight dollars ($48) per hour for approximately six (6) weeks, for a total in unpaid overtime for four thousand three hundred twenty ($4,320) dollars, plus liquidated damages under both federal and state law, and attorneys' fees and costs.  Plaintiff estimates that he is owed in total approximately fifteen thousand dollars ($15,000) in damages related to Defendants' violations of wage-and-hour law.

52. In further efforts to thwart Plaintiff's ability to performing his job, Dhawan often sent projects to Plaintiff on Friday at 2:00 p.m., demanding that they be completed by 5:00 p.m.

53. Because such work was impossible within such a tight timeframe, Plaintiff was constantly forced to work weekends in order to jump through Dhawan's arbitrary hoops.

54. Defendants had sent Plaintiff a laptop from Israel. The laptop had a foreign keyboard and a power adapter that had been taped together.

55. The laptop continually caused problems for Plaintiff.

56. On multiple occasions, Plaintiff brought these problems to Dhawan's attention. She never responded or addressed the issues.

57. Plaintiff offered to fly to Dallas and stay at a hotel at his own expense to continue to work. Dhawan never responded or addressed the issues.

58. Dhawan was very aggressive regarding where in Dallas Plaintiff decided to live. She ordered him to secure and pay for corporate housing if he was not able to close on a new house within her arbitrary time limits.

59. Plaintiff advised Dhawan that he and his domestic partner were attempting to secure local housing.

60. In response, Dhawan made an unprofessional and threatening telephone call to Plaintiff warning him that all housing plans must be approved by her, without a basis for this sudden requirement.

61. Defendant Dhawan also stated that if Plaintiff were not able to move to Texas within her timeframe, that Plaintiff must move into a hotel and absorb all associated costs.

62. Plaintiff then found adequate housing near the Dallas office and so advised Dhawan. She told him without basis that his choice was unacceptable, and unreasonably demanded that he select another place.

63. Although Plaintiff's suspicions were aroused that he was the subject of discriminatory practice by Defendants, he was committed to following the terms of his work agreement.

64. Dhawan again addressed Plaintiff's intended and impending relocation to Dallas, and sending him a list of apartments from which she wanted Plaintiff to choose, an unusual and unreasonable demand since he had already informed her that he had found housing near the Dallas office and because he was paying for his own housing.

65. In late April 2013, Dhawan took a vacation and Sokolov traveled to Virginia to meet customers.

66. Defendant Sokolov asked that Plaintiff join him to meet a client in Virginia.

67. Plaintiff therefore booked travel arrangements at his own expense to meet Defendant in Virginia.

68. Plaintiff observed Sokolov during the client meeting and took notes.

69. After the meeting, Sokolov pulled Plaintiff aside to talk about Plaintiff's initiation into the corporation.

70. Plaintiff assured Sokolov that he and his domestic partner had secured housing in Dallas, they broken their New York City lease, and that he wanted to go to Israel to complete training.

71. Sokolov interrupted Plaintiff, looked Plaintiff in the eye and said, in substance, that he feels Plaintiff did not fit into the company's "culture," he realizes that he should be more politically correct but did not care and that he were Plaintiff, he would be looking for another job.

72. Sokolov then got into his car and drove to the airport.

73. Plaintiff had no other communication with Defendants or their agents for approximately one (1) week. During that time, Plaintiff waited in his New York City apartment with everything in boxes, nowhere to move, and no idea if he even had a job.

74. The week thereafter, Plaintiff's laptop computer from Israel completely "crashed" for no apparent reason and he was not able to perform any work.

75. Plaintiff asked Dhawan if he could come to the Dallas office to work.

76. Defendant Dhawan denied Plaintiff's request. She told him to go to the public library to perform his work and set further deadlines for him that were impossible to meet even though Plaintiff did not have access to a computer. Plaintiff conveyed that working from the public library was not conducive to performing his work.

77. About a week later, Dhawan sent or arranged to have sent to Plaintiff a different laptop; however, none of his emails or documents was on it.

78. In early May 2013, Dhawan went silent.

79. Plaintiff continued to ask Dhawan for work. Dhawan told Plaintiff that "it might not be necessary."

80. During the first or second week of May 2013, Dhawan requested and had a teleconference with Plaintiff.

81. During that teleconference, Dhawan informed Plaintiff that she was recommending Plaintiff's termination.

82. Plaintiff received this news after he had broken his lease in New York City. All of his belongings were in boxes ready to be moved due to Defendants' threats that he relocate or face termination.

83. By letter dated May 29, 2013, Plaintiff's employment with InSightec was terminated.

## FIRST CAUSE OF ACTION
**Sexual Orientation Discrimination under NYCHRL § 8-107(1)(a) against All Defendants**

84. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

85. Pursuant to NYCHRL § 8-107(1)(a), it is unlawful discriminatory practice "[f]or an employer . . . because of . . . marital status, partnership status, [or] sexual orientation . . . of any person, to . . . discharge from employment such person or to discriminate against such person in . . . employment."

86. Mr. Beeney is a member of a protected class because he was and is gay.

87. Mr. Beeney was qualified for his position of Clinical Engineer based on his education, degree in Engineering, prior employment experience, and was so assessed by Defendants when he was interviewed and thereafter hired to be an employee of InSightec.

88. Mr. Beeney suffered adverse employment actions because, upon information and belief, Defendants Sokolov and Dhawan, upon sensing and/or learning that Mr. Beeney is gay, thwarted and sabotaged Mr. Beeney's ability to receive proper training and experience to successfully continue his position as a Clinical Applications Engineer.

89. *Inter alia*, Defendants Sokolov and Dhawan:

   (i) Refused and failed to schedule Mr. Beeney for sufficient on-site appointments with them or other appropriate InSightec managers or trainers at client hospitals and doctors' offices;

   (ii) Refused and failed to send Mr. Beeney for, upon information and belief, the usual and customary on-site training by InSightec in Israel, which was considered essential prior to them learning of his sexual orientation;

    (iii)    Instead required that Mr. Beeney work from his New York City apartment on projects;

    (iv)    Sent Mr. Beeney a laptop from Israel with non-English keyboard and interface that was effectively impossible for him to use;

    (v)    Imposed wholly unrealistic timeframes for Mr. Beeney to complete the projects in order to prevent him from meeting deadlines; and

    (vi)    Imposed unreasonable relocation and housing requirements on Mr. Beeney that made it impossible for him to relocate to Dallas in a timely, reasonable fashion; and

    (vii)    Such other acts as discussed herein and that shall be revealed during the course of discovery.

90.    Defendants took the preceding adverse employment actions against Mr. Beeney because he is gay.

91.    Pursuant to NYCHRL § 8-107(13)(b)–(13)(b)(3), "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where the employee . . . exercised managerial or supervisory responsibility."

92.    At all relevant times, Sokolov and Dhawan held supervisory and managerial roles and exercised supervisory and managerial responsibilities over Mr. Beeney.

93.    InSightec is therefore liable for the discriminatory conduct of Sokolov and Dhawan.

94.    InSightec is further liable for the acts of other employees who discriminated against Mr. Beeney.

95. Defendants' discriminatory, offensive acts adversely impacted Mr. Beeney within the City of New York.

96. As a result of Defendants' unlawful, outrageous, discriminatory conduct, Mr. Beeney suffered emotional and financial distress, damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial, but estimated to be not less than five hundred thousand dollars ($500,000).

## SECOND CAUSE OF ACTION
**Partnership Status Discrimination under NYCHRL § 8-107(1)(a) against All Defendants**

97. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

98. Pursuant to NYCHRL § 8-107(1)(a), it is unlawful discriminatory practice "[f]or an employer or agent thereof, because of actual or perceived . . . partnership . . . of any person, to . . . discharge from employment such person or to discriminate against such person in . . . employment."

99. Mr. Beeney is in a protected class because he was and is in a same-sex domestic partnership.

100. Mr. Beeney was qualified for his position of Clinical Engineer based on his education, degree in Engineering, prior employment experience, and was so assessed by Defendants when he was interviewed and thereafter hired to be an employee of InSightec.

101. Mr. Beeney suffered adverse employment actions because, upon information and belief, Defendants Sokolov and Dhawan, upon sensing and/or learning that Mr. Beeney was in a domestic partnership and planned to relocate to Dallas with his partner to continue his employment with InSightec, thwarted and sabotaged Mr. Beeney's ability to do so.

102. In addition to the allegations set forth in ¶¶ 85–95 above, when Mr. Beeney told Sokolov that he and his partner had secured housing in Dallas, Sokolov promptly replied, in substance, that Mr. Beeney may "need to find other work." Shortly thereafter, Sokolov conveyed to Mr. Beeney, in substance, that Mr. Beeney "may not work with their company culture, [and that Sokolov would] have to think things over."

103. Thereafter, InSightec terminated Mr. Beeney's employment.

104. Defendants took these adverse employment actions against Mr. Beeney because he was in a domestic partnership.

105. Pursuant to NYCHRL § 8-107(13)(b)–(13)(b)(3), "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where the employee . . . exercised managerial or supervisory responsibility."

106. At all relevant times, Sokolov and Dhawan held supervisory and managerial roles and exercised supervisory and managerial responsibilities over Mr. Beeney.

107. InSightec is therefore liable for the discriminatory conduct of Sokolov and Dhawan.

108. InSightec is further liable for the acts of other employees who discriminated against Mr. Beeney.

109. Defendants' discriminatory, offensive acts adversely impacted Mr. Beeney within the City of New York.

110. As a result of Defendants' unlawful, outrageous, discriminatory conduct, Mr. Beeney suffered emotional and financial distress, damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial, but estimated to be not less than five hundred thousand dollars ($500,000).

## THIRD CAUSE OF ACTION
**Withholding of Training under NYCHRL § 8-107(2)(b) against All Defendants**

111. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

112. Pursuant to NYCHRL § 8-107(2)(b), it is unlawful discriminatory practice "[t]o withhold from any person" "the right to . . . participate in . . . occupational training" "because of . . . partnership status [or] sexual orientation."

113. When Defendants learned of Plaintiff's sexuality and his partnership status, they withheld from him training that they had previously characterized as essential, which is violative of the above statute.

114. Defendants' discriminatory, offensive acts adversely impacted Mr. Beeney within the City of New York.

115. As a result of Defendants' unlawful, outrageous, discriminatory conduct, Mr. Beeney suffered emotional and financial distress, damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial, but estimated to be not less than five hundred thousand dollars ($500,000).

## FOURTH CAUSE OF ACTION
**Unpaid Overtime Wages under the FLSA against All Defendants**

116. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

117. Upon information and belief, Defendants at all relevant times owned and operated an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 201–19.

118. At all relevant times to this action, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203.

119. At all relevant times to this action, Plaintiff was employed by Defendants within the meaning of 29 U.S.C. § 203.

120. Defendants willfully failed to pay Plaintiff overtime compensation for each hour he worked in excess of forty (40) hours in a workweek in violation of 29 U.S.C. § 207.

121. Defendants willfully failed to pay Plaintiff overtime compensation for each hour he worked in excess of forty hours in a workweek in violation of FLSA, 29 U.S.C. § 207.

122. Defendants violations of the FLSA, and described herein, were willful and intentional.

123. Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action pursuant to 29 U.S.C. 216(b), in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Unpaid Overtime Wages under the N.Y. LAB. LAW against Defendant InSightec**

124. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

125. At all relevant times to this action, Defendants were Plaintiff's employers within the meaning of N.Y. LAB. LAW §§ 2 and 651.

126. At all relevant times to this action, Plaintiff was Defendants' employee within the meaning of N.Y. LAB. LAW §§ 2 and 651.

127. Defendants willfully failed to pay Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for each hour worked in excess of forty hours in a workweek as required under N.Y. LAB. LAW §§ 650 et seq., 12 NYCRR § 146-1.4.

128.  As a result of Defendants' N.Y. LAB. LAW violations, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for overtime wages, liquidated damages equal to one hundred percent of the total wages to be found due, reasonable attorneys' fees, and the costs of the action, pursuant to N.Y. LAB. LAW § 663(1).

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(a)  For the First Cause of Action, against all Defendants, an amount to be determined at trial, but estimated to be not less than five hundred thousand dollars ($500,000);

(b)  For the Second Cause of Action, against all Defendants, an amount to be determined at trial, but estimated to be not less than five hundred thousand dollars ($500,000);

(c)  For the Third Cause of Action, against all Defendants, an amount to be determined at trial, but estimated to be not less than five hundred thousand dollars ($500,000);

(d)  For the Fourth Cause of Action, against all Defendants, an amount to be determined at trial, but estimated to be not less than fifty thousand dollars ($50,000), exclusive of fees and costs;

(e)  For the Fifth Cause of Action, against Defendant InSightec, an amount to be determined at trial, but estimated to be not less than fifty thousand ($50,000) dollars, exclusive of fees and costs;

(f)  An award of Plaintiff attorneys' fees and costs;

(g)  An award to Plaintiff of pre-judgment interest;

(h)     An award to Plaintiff of post-judgment interest; and

(i)     Granting such further relief as this Court may deem just, equitable, and proper.

Dated: New York, New York  
        November 12, 2013

Respectfully submitted by:

**THE HARMAN FIRM, PC**  
*Counsel for Plaintiff*

_/s/ Walker G. Harman, Jr._  
Walker G. Harman, Jr. [WH-8044]  
200 West 57th Street, Suite 900  
New York, New York 10019  
(212) 425-2600  
wharman@theharmanfirm.com