UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

BRADLEY BEENEY,

          *Plaintiff*,

      v.

INSIGHTEC, INC.,
AMIT SOKOLOV, *and*
NEHA DHAWAN,

         *Defendants*.

----------------------------------------------------------X

**13 CV 8022 (GBD)**


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION (A) TO DISMISS OR TRANSFER VENUE TO TEXAS, (B) TO DISMISS THE
COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS FOR LACK OF
PERSONAL JURISDICTION, AND (C) TO DISMISS AS AGAINST DEFENDANT
SOKOLOV FOR INSUFFICIENT SERVICE OF PROCESS**


**THE HARMAN FIRM, PC**
*Counsel for Plaintiff*
Walker G. Harman, Jr. [WH-8044]
Ronnie L. Silverberg [RS-6881]
1776 Broadway, Suite 2030
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
rsilverberg@theharmanfirm.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ...................................................................................................................... 6

I.    VENUE IS PROPER IN THIS COURT UNDER 28 U.S.C. § 1391(b) AND THE FLSA
      BECAUSE NEW YORK CITY IS THE LOCUS OF A SUBSTANTIAL PART OF THE
      EVENTS UNDERLYING PLAINTIFF'S CLAIMS ............................................................ 7

II.   THE BALANCE OF CONVENIENCES AND INTERESTS OF JUSTICE WEIGH
      STRONGLY IN PLAINTIFF'S FAVOR TO LITIGATE THIS CASE IN THIS COURT,
      PLAINTIFF'S CHOSEN FORUM ................................................................................. 10

      A.   Plaintiff Already Agreed That Depositions of Party and Non-Party Witnesses Living or
           Working in Texas May be Conducted in Dallas; Plaintiff's Non-Party Witnesses in
           New York Compel That This Case Should Remain in this Court .................................. 10

      B.   Defendants' Corporate Employee Witnesses ................................................................ 11

      C.   Plaintiff's Non-Party Witnesses in New York City ...................................................... 12

      D.   Deference to Plaintiff's Choice of Forum and Plaintiff's Inferior Financial Resources
           Compared to Defendants' Favor this New York Forum ............................................... 13

      E.   This Forum's Familiarity with the Pertinent Law Heavily Favors Denial of a Transfer to
           Texas; Plaintiff's NYCHRL Claims Properly Must Be Litigated in New York ........... 14

      F.   Locus of Operative Facts Favors New York ................................................................. 15

      G.   Trial Efficiency and Interests of Justice Favor New York ........................................... 16

III.  THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL
      DEFENDANTS ............................................................................................................. 16

      A.   The Individual Defendants Transacted Business in New York ..................................... 16

      B.   The Individual Defendants' Intentionally Tortious Conduct Injured Plaintiff in New
           York, and InSightec Derives Substantial Revenue from Interstate or International
           Commerce; Jurisdiction Over Individual Defendants Under CPLR § 302(a)(3)(ii) is
           Met ............................................................................................................................. 18

           1.   Defendants' Tortious Conduct Outside New York Caused Injury to Plaintiff in
                New York ........................................................................................................... 19

           2.   Defendants' Could Reasonably Expect Their Unlawful Acts to Have Consequences
                in New York ........................................................................................................ 20

           3.   Defendants Derive Substantial Revenue from Interstate or International Commerce
                .......................................................................................................................... 21

      C.   Exercising Jurisdiction Over Individual Defendants Comports With Due Process ...... 22

IV.   DEFENDANT SOKOLOV WAS PROPERLY SERVED WITH PROCESS .................... 24

V.    CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*(888) Justice, Inc. v. Just Enter., Inc.,*
    06 CV 6410 (GBD), 2007 WL 2398504 (S.D.N.Y. 2007) ..................... 7

*800-Flowers v. Intercont'l Florist,*
    860 F. Supp. 128 (S.D.N.Y. 1994) ..................... 14

*Agency Rent a Car Sys. v. Grand Rent a Car Corp.,*
    98 F.3d 25 (2d Cir. 1996) ..................... 17

*Atl. Recording Corp. v. Project Playlist,*
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) ..................... 10

*Bail v. Metallurgic Hoboken-Overpelt, S.A.,*
    902 F.2d 194 (2d Cir. 1990) ..................... 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999) ..................... 19

*Bayless v. Dresser Indus., Inc.,*
    677 F. Supp. 195 *on reconsideration,*
    702 F. Supp. 79 (S.D.N.Y. 1988) ..................... 14

*Burger King v. Rudzewicz,*
    471 U.S. 462, 105 S. Ct. 2174 (1985) ..................... 22

*Calder v. Jones,*
    465 U.S. 783, 104 S. Ct. 1482 (1984) ..................... 22

*Cox v. Nat'l Football League,*
    97 CV 3741, 1997 WL 619839 (N.D. Ill. Sept. 29, 1997) ..................... 8

*Cuyahoga Equip. Corp., In re,*
    980 F.2d 110 (2d Cir. 1992) ..................... 10

*Dean v. Handysoft Corp.,*
    04 CV 5387 (RK), 2005 WL 362662 (E.D. Pa. 2005) ..................... 8

*DiGiuseppe v. DiGiuseppe,*
    70 Misc. 2d 188, 333 N.Y.S.2d 245 (N.Y. Civ. Ct. 1972) ..................... 24

*DiStefano v. Carozzi North America, Inc.,*
    286 F.3d 81 (2d Cir. 2001) ..................... 19

*Drake v. Lab. Corp. of Am. Holdings,*
    02 CV 1924 (FB)(RML), 2007 WL 776818 (E.D.N.Y. Mar. 13, 2007) *aff'd,*
    417 F. App'x 84 (2d Cir. 2011) ..................... 21

*Foley v. Sammons Preston, Inc.,*
    03 CV 5485 (GBD), 2004 WL 35438 (S.D.N.Y. Jan. 6, 2004) ..................... passim

*G. Angel, Ltd. v. Camper & Nicholsons USA,*
    06 CV 3495 (PKL), 2008 WL 351660 (S.D.N.Y. Feb. 8, 2008) ..................... 14

*Gambino v. Harvard Prot. Servs. LLC,*
    10 CV 983 (PAC), 2011 WL 102691 (S.D.N.Y. Jan. 11, 2011) ..................... 7

*Glass v. S&M NuTec, LLC,*
    456 F. Supp. 2d 498 (S.D.N.Y. 2006) ..................... 11

*Hall v. S. Orange,*
    89 F. Supp. 2d 488 (S.D.N.Y. 2000) ..................... 7

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*
    763 F.2d 55 (2d Cir. 1985) ..................... 17

*Hollins v. U.S. Tennis Assoc.*,
   469 F. Supp.2d 67 (E.D.N.Y. 2006) ............................................................... 21

*Hubbell, Inc. v. Pass & Seymour, Inc.*,
   883 F. Supp. 955 (S.D.N.Y. 1995) ............................................................... 10

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
   419 F. Supp.2d 395 (S.D.N.Y. 2005) ............................................................ 12

*Ingraham v. Carroll*,
   90 N.Y.2d 592, 687 N.E.2d 1293 (1997) ..................................................... 21

*Int'l Healthcare Exch. v. Global Healthcare Exch.*,
   470 F. Supp.2d 345 (S.D.N.Y. 2007) ..................................... 16, 17, 23, 25

*Iwankow v. Mobil Corp.*,
   150 A.D.2d 272, 541 N.Y.S.2d 428 (N.Y. App. Div. 1st Dep't 1989) ................. 16

*Jin v. EBI*,
   05 CV 4201 (NGG), 2006 WL 3335102 (E.D.N.Y. Oct. 17, 2006) ......................... 21

*Kernan v. Kurz-Hastings*,
   175 F.3d 236 (2d Cir. 1999) ...................................................................... 23

*Kreutter v. McFadden Oil Corp.*,
   71 N.Y.2d 460, 522 N.E.2d 40 (1988) ......................................................... 17

*Launer v. Buena Vista Winery, Inc.*,
   916 F. Supp. 204 (E.D.N.Y. 1996) ......................................................... 18, 21

*Litton v. Avomex, Inc.*,
   08 CV 1340 (NAM)(DRH), 2010 WL 160121 (N.D.N.Y. Jan. 10, 2010) ......... passim

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke*,
   15 N.Y.2d 443, 261 N.Y.S.2d 8 (1965) ....................................................... 17

*Mareno v. Rowe*,
   910 F.2d 1043 (2d Cir. 1990) .................................................................... 16

*McGowan v. Smith*,
   52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) .................................................... 17

*MetLife v. Robertson-Ceco*,
   84 F.3d 560 (2d Cir. 1996) ....................................................................... 23

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
   484 U.S. 97, 108 S. Ct. 404 (1987) ............................................................. 16

*Parke-Bernet Galleries v. Franklin*,
   26 N.Y.2d 13, 308 N.Y.S.2d 337 (1970) ..................................................... 17

*PDK Labs v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) ................................................................. 7, 17

*Popa v. PricewaterhouseCoopers*,
   08 CV 8138 (LTS)(KNF), 2009 WL 2524625 (S.D.N.Y. Aug. 14, 2009) ............... 16

*Rohn Padmore v. LC Play*,
   679 F. Supp.2d 454 (S.D.N.Y. 2010) .......................................................... 16

*Roland v. Margi Sys.*,
   00 CV 341(JTE), 2001 WL 241792 (W.D.N.Y. Feb. 28, 2001) ................. 20, 22, 23

*Saferstein v. Paul, Mardinly, Durham, James*,
   927 F. Supp. 731 (S.D.N.Y. 1996) .............................................................. 7

*Shay v. Sight & Sound System*,
   668 F. Supp.2d 80 (D.D.C. 2009) ............................................................... 9

*Underwood v. Shukat*,
   01 CV 786 (HB), 2002 WL 1315597 (S.D.N.Y. June 14, 2002) ........................ 24

*Whitaker v. Fresno Telsat, Inc.,*
   87 F. Supp. 2d 227 (S.D.N.Y. 1999) ........................................................ 18
*World-Wide Volkswagen v. Woodson,*
   444 U.S. 286, 100 S. Ct. 559 (1980) ...................................................... 22

**Statutes**
28 U.S.C. § 1391(b)(2) ....................................................................... 2, 7, 8
28 U.S.C. § 1404(a) ................................................................................ 2, 10
29 U.S.C. § 216 ............................................................................................. 7
New York Labor Law ("NYLL") ................................................................ 1

**Rules**
CPLR § 302(a) .................................................................. 16, 18, 21, 25
CPLR § 302(a)(3) .......................................................................... 18, 21
CPLR § 302(a)(3)(ii) .............................................................. 18, 21, 25
Fed. R. Civ. P. 12(b)(3) ........................................................................ 7, 8

**Other Authorities**
"Are We Evolving on Sexual Orientation/Gender Identity Issues?"
   25 No. 2 Tex. Emp. L. Letter 7, February 2014 ..................................... 15

## PRELIMINARY STATEMENT

Plaintiff Bradley Beeney ("Plaintiff" or "Beeney") submits this Memorandum of Law in opposition to Defendants' Motion (i) to dismiss or transfer venue; (ii) to dismiss claims against Individual Defendants for lack of personal jurisdiction; and (iii) to dismiss as against Defendant Sokolov for insufficient service of process.  In this action, Plaintiff seeks damages against Defendants under the New York City Human Rights Law, N.Y.C. ADMIN. CODE §§ 8-101–31 ("NYCHRL"), and the Fair Labor Standards Act of 1938[1] as amended, 29 U.S.C. §§ 201–19 ("FLSA").

Mr. Beeney, a gay man with a male domestic partner, endured discrimination by Defendants on the basis of his sexual orientation and domestic partnership status.  Defendant InSightec, Inc. ("InSightec" or "Company"), and individual Defendants Neha Dhawan ("Dhawan") and Amit Sokolov ("Sokolov") (collectively, the "Individual Defendants") who acted on InSightec's behalf, hired Mr. Beeney while he was living and working in New York City.  As part of his employment duties, he commenced working in New York City with the future expectation that he would subsequently transfer to Dallas, Texas.  Due to Defendants' homophobic employment practices, the transfer never occurred.

Defendants directed Mr. Beeney to perform work in New York City for approximately three (3) months, during which time Defendants learned of his sexual orientation and domestic partnership, and terminated him just when he was scheduled to move to Dallas.  Mr. Beeney suffered significant financial damages and severe emotional distress in New York City as a result of Defendants' illegal discriminatory actions.

Defendants also failed to pay Mr. Beeney premium overtime in violation of the FLSA and the NYLL.  Mr. Beeney's position with Defendant InSightec did not require independent judgment; he did not supervise anyone, worked approximately fifty to sixty (50–60) hours per week, and was not compensated for the time he worked in excess of forty (40) hours per week.

---

[1]   Plaintiff also brings similar claims under the New York Labor Law ("NYLL").

Defendant InSightec, a sophisticated global corporation with substantial financial resources, with Defendants Sokolov and Dhawan, filed this motion to delay, harass, and intimidate Plaintiff, and to unnecessarily escalate legal fees.[2]  Plaintiff, an individual whose limited resources pale in comparison to those of Defendants',[3] will suffer severe prejudice financially and legally if forced to litigate his claims against Defendants in Texas since Texas jurisprudence fails to provide individuals with the kind of strong protections afforded by the NYCHRL and at issue in this case—namely, protection against discrimination based on sexual orientation and domestic partnership status.  *See* Declaration of Walker G. Harman, Jr. dated April 15, 2014 at ¶ 1–7.

As set forth more fully below, Defendants' motion must be denied in its entirety.[4]  This case should remain in this Court as (i) Plaintiff's choice of forum is proper as a matter of law pursuant to 28 U.S.C. § 1391(b)(2), (ii) Defendants failed to meet their heavy burden of proving that transfer to Texas is necessary under 28 U.S.C. § 1404(a), and (iii) any such transfer will be unduly prejudicial to Plaintiff.  Further, this Court has personal jurisdiction over the Individual Defendants pursuant to CPLR §§ 302(a)(1) and (a)(3)(ii), and service of process on Defendant Sokolov was proper.

### STATEMENT OF FACTS

The salient facts, which are more fully set forth in the Complaint and the accompanying Affidavit of Bradley Beeney, dated April 15, 2014, are summarized as follows:

---

[2]   References herein to Plaintiff's Opposition are designated as follows: the Complaint is "Compl. ¶ __," the Affidavit of Bradley Beeney, sworn to April 15, 2014 is "Beeney Opp. Aff. ¶ __," and the Declaration of Walker G. Harman, Jr. is "Harman Opp. Decl. ¶ __."  References to Defendants' moving papers are designated as follows: "Def. Opp. Mem. __," and the accompany affidavits are designated "[Name of Declarant] Mov. Decl. ¶ __."

[3]   InSightec has tendered this action to an insurance company and hired a large international law firm to represent Defendants.  Harman Opp. Decl. ¶ 10

[4]   To the extent Defendants submit allegations on this motion relating to the purported reasons for Plaintiff's termination to advance a legitimate non-discriminatory context for Plaintiff's termination and to prejudice this Court against Plaintiff, such allegations have no bearing on the pending jurisdictional and venue matters at issue, and should be stricken.  Alternatively, should this Court determine that these factually disputed issues are relevant to the pending motion, Plaintiff requests limited discovery on these issues.  *See e.g.*, *Litton v. Avomex, Inc.*, 08 CV 1340 (NAM)(DRH), 2010 WL 160121, at *9–10 (N.D.N.Y. Jan. 10, 2010).

Mr. Beeney is an engineer with a background in MRI and radiology, who lived in New York City at all times relevant to this action.  InSightec, a U.S.-based subsidiary of the Israeli company, InSightec, Ltd., manufactures and sells advanced technological equipment worldwide for non-invasive treatment of various health conditions, including uterine fibroids, bone metastases, and neurological disorders.  In late December 2012, Plaintiff began communicating about the position via email with Defendant Dhawan, an InSightec Clinical Engineer.

Plaintiff, while in New York City, subsequently interviewed by telephone with Defendant Sokolov from Israel, who also would be responsible for training Plaintiff in using InSightec's products and services and to whom Plaintiff was to report.[5]  The parties agreed that if Plaintiff were hired, he would receive training in Haifa, Israel for approximately three to four (3–4) weeks.

In late January 2013, Plaintiff interviewed in person with Dhawan in Dallas, Texas, and with Sokolov via Skype from InSightec's Dallas office.  By letter dated February 11, 2013 sent to Mr. Beeney in New York City, InSightec offered him the position of Clinical Applications Engineer at a starting annual salary of $66,000.  By Employment Agreement dated February 13, 2013 sent to Mr. Beeney in New York City, he accepted InSightec's offer and, at Defendants' direction, worked for InSightec from his New York City home.

To commence Mr. Beeney's employment in New York City, Defendants furnished him with a laptop computer and a corporate American Express card to use for expenses, arranged for him to be paid by direct deposit into his personal bank account in New York City, at Bank of America, 224 8th Avenue, New York, New York 10011; gave him an InSightec email address at bradleyb@insightec.com, and manuals as well as training materials to learn about the device on which he worked.[6]

---

[5]   Plaintiff had an additional telephone interview with Dhawan in New York City.

[6]   The device is known as an "ExAblate," which is a non-invasive, high energy, ultra-sound surgery device used to treat tumors.

In late February 2013, Plaintiff traveled to Dallas for a one-week on-site introduction and orientation.[7]   During that week in the Dallas office, Plaintiff did not conceal his sexual orientation.  During his visit, Plaintiff received text messages from his partner (now husband), who has an unambiguously male name, while his mobile device was in view of Dhawan.  These text messages, such as "I miss you" and "love you" highly suggested that he was in a relationship with a man.  Dhawan asked him about his personal life, if he was married and/or had children, to which he responded "no."

After the orientation week, when Mr. Beeney returned to New York to continue working, Defendants' attitude towards Mr. Beeney changed; Defendants began to alienate him and refused to facilitate teamwork or training for InSightec's devices and services to be offered to its clients. He was prevented from interacting with InSightec's Israel team altogether, other than one "check in" call from Defendant Sokolov to him in New York City.  Although Defendants previously told Plaintiff that it would take him at least six (6) months of on-site training with mentors to become qualified to meet with clients on his own, Ms. Dhawan suddenly expressed an expectation that Plaintiff immediately understand the technology.

After the orientation, during March 2013, Defendant Sokolov, through Defendant Dhawan, directed Mr. Beeney to complete various projects on a weekly basis (mostly data entry assignments, as though he was a clerk), working approximately fifty to sixty (50–60) hours per week; however she sent assignments at the last minute and provided little to no instruction or

---

[7]   Plaintiff planned to eventually move to Texas after working in New York and training in Israel.  During his orientation week in Texas, Plaintiff met with InSightec's human resources and benefits manager, Patricia Ward ("Ward").  She instructed Plaintiff to fraudulently use InSightec's Dallas office as his place of residence for payroll purposes because she did not want to have to comply with New York laws pertaining to employees. Ward also stated that since Plaintiff would be moving to Texas within a few months, using a New York address would present too much work for her.

guidance.[8]  As such, Mr. Beeney was constantly forced to work weekends.  No independent judgment was required of him and he never was paid overtime for his work.

Defendants continued to refuse to assist Mr. Beeney in performing his duties.  The laptop sent to New York had a foreign keyboard and a power adapter that had been taped together; as a result, it prevented Mr. Beeney from being as efficient as he could have been.  On multiple occasions, Plaintiff brought these problems to Dhawan's attention, but she never responded or addressed the issues.  All of this discriminatory workplace conduct occurred in New York City.

After Mr. Beeney made it clear to Dhawan that he was moving to Dallas with his male domestic partner, she became aggressive and stymied all of his efforts to secure housing.[9]  Shortly after, Mr. Beeney informed Dhawan that he had secured housing in Dallas, within walking distance to InSightec's office, less than a mile away.  She outright rejected his choice without justification, demanding that he select another place.  He then asked her about scheduling his mandatory training in Israel.  She responded that they were postponing the training as well as his relocation to Dallas, with no reason afforded.

In late April 2013, Defendant Sokolov directed Mr. Beeney to meet him at a client facility in Virginia.  After the meeting, Sokolov inquired about Plaintiff's plans going forward regarding relocation to Dallas and training in Israel.  Plaintiff assured Sokolov that he wanted to complete the training in Israel, that he and his domestic partner already had secured housing in Dallas and had broken their New York City lease.  Sokolov promptly replied, in substance, that "while what [he was] about to say may not be politically correct," he "did not care," he felt

---

[8]   From the beginning and throughout Plaintiff's employment with InSightec, Defendant Sokolov was the driving force behind Mr. Beeney's work assignments to be completed in New York, notwithstanding the fact that Dhawan was the individual who instructed Mr. Beeney on his assignments verbally or by email.  Mr. Beeney knows this because Dhawan always referenced Sokolov and/or his office as creating the assignment.  Further, Mr. Beeney and Dhawan were suppose to speak at least weekly, every Monday morning, regarding his outstanding assignments and new ones for the forthcoming week—and at times when there was a delay in Dhawan contacting Mr. Beeney regarding his weekly assignment, she attributed the delay to "Amit [Sokolov] in Israel."  *See* Beeney Opp. Aff. ¶ 10.  In addition, when Dhawan was apparently on vacation in early May 2013, Sokolov contacted Mr. Beeney directly regarding his work assignments to be completed in New York.

[9]   When Plaintiff advised Dhawan that he and his domestic partner were attempting to secure local housing, Dhawan suddenly announced, in a threatening manner, that all housing plans required her approval.

Plaintiff did not fit into the company's "culture," and that if he were Plaintiff, he would look for another job.

Following this conversation, Plaintiff had no other communication with Defendants for approximately one (1) week.  During that time, Plaintiff waited in his New York City apartment with everything in boxes, and made U-Haul arrangements while his partner contacted headhunters in Dallas, yet had no knowledge of whether he should proceed to move to Dallas, or even if he still had a job.  The following week, Plaintiff's laptop computer from Israel stopped working for no apparent reason and he was unable to perform any work.  Plaintiff asked Dhawan if he could come to the Dallas office to work on the assignments that she was giving him. Defendant Dhawan said "no," told Mr. Beeney to use a computer at a public library in New York, and set further deadlines for him that were impossible to meet considering his lack of access to a company computer.

In early May 2013, Defendant Sokolov sent Mr. Beeney several emails in New York City regarding his work assignments.  When Mr. Beeney subsequently asked for additional work, Defendant Dhawan told him that "it might not be necessary."  A week or so later, he emailed her to schedule a call regarding outstanding work.  Dhawan called him in New York and told him, in substance, that while he was "improving," she was recommending his termination, and hung up. By letter dated May 29, 2013 sent to Plaintiff in New York City, he was notified that his employment was terminated.

During the entire time Mr. Beeney worked for Defendants in New York City, he never supervised anyone, nor did he have the right to control or make decisions regarding other InSightec employees.  Furthermore, he did not have the authority to exercise independent judgment over any task.  His assignments were mostly akin to data entry.

## ARGUMENT

Since there has been no discovery and no evidentiary hearing on jurisdiction, plaintiff need only make a *prima facie* showing that jurisdiction is proper.  *See Bail v. Metallurgic*

6

*Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196–97 (2d Cir. 1990).  The Court must construe the pleadings and supporting affidavits and declarations in the light most favorable to plaintiff.  *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  With respect to a motion to dismiss or transfer for improper venue, the Court must accept all allegations in the complaint as true and may examine affidavits, declarations, or other documents outside the complaint, but draw all reasonable inferences and resolve all conflicts in the plaintiff's favor.  *See (888) Justice, Inc. v. Just Enter., Inc.*, 06 CV 6410 (GBD), 2007 WL 2398504, at *5 (S.D.N.Y. Aug. 22, 2007); *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 964 F. Supp. 2d 287, 291 (S.D.N.Y. 2013).

## I.     VENUE IS PROPER IN THIS COURT UNDER 28 U.S.C. § 1391(b) AND THE FLSA BECAUSE NEW YORK CITY IS THE LOCUS OF A SUBSTANTIAL PART OF THE EVENTS UNDERLYING PLAINTIFF'S CLAIMS

The general federal venue statute provides, in pertinent part, that venue is proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred" even if other material events occurred elsewhere.  28 U.S.C. § 1391(b)(2); *Saferstein v. Paul, Mardinly, Durham, James*, 927 F. Supp. 731, 735–36 (S.D.N.Y. 1996); *Hall v. S. Orange*, 89 F. Supp. 2d 488, 493 (S.D.N.Y. 2000); *Litton v. Avomex, Inc.*, 08 CV 1340 (NAM)(DRH), 2010 WL 160121, at *10 (N.D.N.Y. Jan. 10, 2010).  A claim of violation of FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."  29 U.S.C. § 216; *Gambino v. Harvard Prot. Servs. LLC*, 10 CV 983 (PAC), 2011 WL 102691, at *1 (S.D.N.Y. Jan. 11, 2011).

Here, Plaintiff's Complaint and supporting Affidavit in Opposition allege that significant events material to Plaintiff's discrimination and wage and hour claims occurred within the Southern District of New York.  Defendants' claims that the decision regarding his termination occurred in Texas, are irrelevant under § 1391(b)(2) analysis when, as here, Plaintiff is faced with a FED. R. CIV. P. 12(b)(3) motion to dismiss for improper venue.  As the Court in *Litton* stated:

> The fact that decisions regarding a plaintiff's employment were made elsewhere, does not necessitate the conclusion that no alleged act of

7

discrimination occurred in the district where the plaintiff resided and worked. *Cox v. Nat'l Football League*, 97 CV 3741, 1997 WL 619839, at *3 (N.D. Ill. Sept. 29, 1997) (to hold otherwise would allow employers everywhere "to make their decisions to terminate and discipline in far away offices in order to protect themselves from litigation") . . . . If a plaintiff is employed in a district at the time he is discharged, venue would be proper in that district under § 1391(b)(2). *See Dean v. Handysoft Corp.*, 04 CV 5387 (RK), 2005 WL 362662 (E.D. Pa. Feb. 16, 2005) (the plaintiff charged the defendant with racial discrimination).

*Litton*, at *10.

In support of their 12(b)(3) motion, Defendants' assert that the acts "that gave rise to Beeney's discrimination claims pleaded in his First, Second and Third Causes of Action occurred in Dallas, Texas." Def. Opp. Mem. 13–14. This is simply not accurate. Defendants further contend, erroneously, that because he was hired to eventually relocate to Texas and his employment agreement was governed by Texas law, he is barred from bringing his claims in the Southern District of New York.[10]

Here, a substantial part of Defendants' illegal discriminatory actions took place in New York City. Mr. Beeney's claims are predicated on the disparate treatment imposed by Defendants *after* he returned to New York City, *after* his orientation week in Dallas *after* Defendants learned that he was gay *and* was planning to move to Dallas with his male partner. Evidence of these discriminatory actions within New York City include, for example, Defendant Dhawan's repeatedly arbitrary and unreasonable deadlines for Mr. Beeney to complete ongoing assignments in New York, bolstered by Defendants' refusal to provide him with the necessary

---

[10] Defendants' argument with respect to the employment agreement is vacuous, and Defendants cite no authority for their position that the choice of law component in the agreement is either compelling, or even persuasive, under the facts and circumstances of this case. Indeed, the agreement provides: "This Agreement shall be governed by and interpreted under the laws of the State of Texas without giving effect to any conflict of law provisions." Zarko Mov. Decl., Exhibit B, ¶ 13 (emphasis added). This refers to issues within the four corners of the Agreement. It does not mean that Plaintiff is devoid of protections from discrimination based on sexual orientation and domestic partnership status pursuant to NYCHRL for events and omission that occurred while he was residing and working in New York City. As *Litton* makes clear, to hold otherwise would allow employers to engage in illegal discriminatory misconduct, just as Defendants here seek to do. In *Litton*, as here, the venue issue involved the plaintiff's choice of forum in the Northern District of New York, where he lived and worked, versus the defendants' contention that all material events and decisions regarding the plaintiff's employment were made in their Texas offices. At issue in *Litton* also was defendant's assertion that some of the alleged discriminatory conduct occurred during a conversation in Chicago. This did not persuade the *Litton* Court that venue pursuant to § 1391(b)(2) was improper in the Northern District of New York and thus defendants' 12(b)(3) motion to dismiss for improper venue was denied.

resources (such as a workable laptop or computer) to facilitate his work efforts; Defendants'
refusal to provide necessary instructions or guidance for difficult assignments; Defendant
Dhawan's threatening telephone call to Mr. Beeney in New York demanding for the first time
and without justification or rationalization that he obtain her approval for his Dallas housing
plans; Defendants' deliberate isolation and alienation of Mr. Beeney from the Israel and Texas
teams while he was working for Defendants in New York.  Further, at all times Mr. Beeney was
required to work overtime in New York.  There is no dispute that for three (3) months,
Defendants sent Mr. Beeney assignments to complete in New York City; his work within the
state was not a unilateral decision on his part.  The Court in *Litton* stated:

> Plaintiff contends that the adverse employment actions taken against
> plaintiff materially affected the terms of his employment within the
> Northern District of New York and the impact was felt extensively in this
> district. . . .   The record establishes that plaintiff resided in New York,
> worked in New York and was present in New York when he received
> communication from [corporate defendant] Avomex advising him that he
> was terminated.   Thus, significant events material to plaintiff's claim
> occurred in the Northern District of New York.   Accordingly, venue is
> proper in this district and defendants' motion for dismissal on this basis is
> denied.

*Litton*, at *11.

Citing *Shay v. Sight & Sound System*, 668 F. Supp. 2d 80 (D.D.C. 2009) Defendants
argue improper venue because the computation and processing of Mr. Beeney's pay purportedly
occurred in Texas.  Def. Mov. Mem. 9.  In *Shay*, the Court determined that venue was improper
not only because computation of wages occurred elsewhere, but because, unlike here, the
plaintiff entirely failed to establish that a substantial part of the events giving rise to the litigation
took place in their chosen forum.  *Shay*, 668 F. Supp. 2d at 84.  By contrast, Mr. Beeney has
established that he worked in New York, his chosen forum, and was denied overtime pay during
the entirety of his employment with Defendants.

In sum, Plaintiff's FLSA claims and his NYCHRL claims are properly before this Court.

## II.   THE BALANCE OF CONVENIENCES AND INTERESTS OF JUSTICE WEIGH STRONGLY IN PLAINTIFF'S FAVOR TO LITIGATE THIS CASE IN THIS COURT, PLAINTIFF'S CHOSEN FORUM

Defendants seek to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  Def. Mov. Mem. 16–22.  Motions to change venue are within the broad discretion of the court and are determined by notions of convenience and fairness on a case-by-case basis.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).  Defendants here have the burden of demonstrating that a transfer is warranted, and this Court should not disturb the Plaintiff's choice of forum unless Defendants make a "clear and convincing showing that a balance of convenience favors" a transfer.  *Hubbell, Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995).  Defendants fail to make this showing.

In determining whether to grant a motion to transfer venue, the courts carry out a fact-intensive analysis balancing the following factors on equitable grounds:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Foley v. Sammons Preston, Inc.*, 03 CV 5485 (GBD), 2004 WL 35438, at *3 (S.D.N.Y. Jan. 6, 2004) (citations omitted); *see also Atl. Recording Corp. v. Project Playlist*, 603 F. Supp. 2d 690, 696–97 (S.D.N.Y. 2009).  As shown below, since the factors above weigh heavily in Plaintiff's favor, the Court should deny Defendants' Motion.

### A.   Plaintiff Already Agreed That Depositions of Party and Non-Party Witnesses Living or Working in Texas May be Conducted in Dallas; Plaintiff's Non-Party Witnesses in New York Compel That This Case Should Remain in this Court

First, Plaintiff's selected forum in this Court in New York City does not inconvenience witnesses or non-parties, and does not affect Plaintiff's ability to compel attendance of unwilling witnesses because Plaintiff already has agreed to take depositions in Dallas, Texas, if necessary.  Harman Opp. Decl. ¶ 11.  At least three (3) witnesses are in New York: Mr. Beeney, his husband and the manager of the building where he resided in New York.

10

Second, although Defendants argue that it is inconvenient for them to litigate in the Southern District of New York, Plaintiff, his attorneys and Defendants' attorneys are all located in New York City.  In addition, because Defendants had Mr. Beeney working for them in New York City, they cannot reasonably argue that New York is an inconvenient or unexpected forum to litigate an issue related to its relationship with a New York employee.  *See Foley*, 2004 WL 35438 at *4 (finding that defendant's argument regarding convenience of the parties was unpersuasive because defendant did business in New York and could expect to litigate an employment-related issue with its New York employee in New York).

Third, Defendants submission of declarations from purported witnesses, all of whom are employed by InSightec is not compelling and merely shows Defendants' desperate, disingenuous attempt to transfer this case to Texas simply to harass and intimidate Plaintiff.  It is well established that the ability of a corporate defendant to secure the appearance of its employees diminishes the concern over the location of witnesses outside the forum where the action is pending.  *See e.g*., *Glass v*. *S&M NuTec, LLC*, 456 F. Supp. 2d 498, 503–04 (S.D.N.Y. 2006) (holding that, as a practical matter, employee-witnesses would be available in any venue in which the corporation could properly be sued).  Further, as set forth in Plaintiff's Opposition Affidavit, with the exception of Individual Defendants Sokolov and Dhawan, he had little or no contact with the other declarants and some of these individuals do not even purport to allege that they had any input whatsoever into his hiring, management of his work assignments, assessment of his work performance and/or decision to fire him.  Beeney Opp. Aff. ¶ 20–22; Harman Opp. Decl. ¶ 11.  Additionally, as stated above, Plaintiff's attorney will go to Dallas to depose those declarants in Texas that Plaintiff wishes to depose.

### B.  Defendants' Corporate Employee Witnesses

With respect to declarant Raquel Alashoor, Mr. Beeney does not recall having any conversation with her other than when she ordered lunch for him once or twice during his orientation week in the Dallas office, and then some email exchanges regarding the return of

company property after he was fired (Beeney Opp. Aff. ¶ 22); and, her declaration states only that she attended to ministerial tasks.  Alashoor Mov. Decl. ¶¶ 3–4.

With respect to declarant Haya Zarko, a Human Resources person in Tel Aviv, Mr. Beeney never met her and does not recall having any conversation with her regarding his employment performance or termination.  Beeney Opp. Aff. ¶ 22.

With respect to the Declaration of Patricia Ward, Mr. Beeney's contact with her was limited to arranging for his payment of wages while he was in orientation at the Dallas office, and reimbursement for his expenses.  Ward Mov. Decl. ¶¶ 3–6.  When he met with her she expressed that she could not be bothered with calculating his applicable taxes for his work in New York, so she used the office's Texas address as his address even though he did not live there.  Beeney Opp. Aff. ¶ 3 n.3.  Plaintiff will depose Ms. Ward in Dallas regarding InSightec's tax evasion tactics and other pertinent issues.

With respect to declarant Nadir Alikacem, Mr. Beeney met with him at his initial visit to the Dallas office.  Contrary to Mr. Alikacem's Declaration at ¶ 3, he never said that Mr. Beeney was expected to move to Dallas as soon as possible.  Beeney Opp. Aff. ¶ 22.  Mr. Alikacem told that InSightec changes the software they use to keep the FDA off its back.  Mr. Alikacem also expressed that there is a "weird culture" at InSightec, and that if one does not fit in, he/she should quit.  Plaintiff will depose Mr. Alikacem in Dallas.

### C.  Plaintiff's Non-Party Witnesses in New York City

In contrast to Defendants' purported witnesses, Plaintiff has provided at least two (2) *non-party witnesses* who reside and/or work in New York County and will provide testimony related to the claims and defenses in this action.  Non-party witnesses are accorded more weight. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) ("[t]he convenience of non-party witness is accorded more weight than that of party witnesses") (citations omitted).

One individual, Plaintiff's now husband, Matthew Newsom, who resides and works in New York City, will testify, *inter alia*, about the hours that Mr. Beeney worked in excess of forty

(40) hours per week, the ongoing work assignments he received from Defendants, his frustration with the unworkable equipment they furnished to him, the humiliation and degradation he suffered being stuck in his apartment for nearly two (2) months with his belongings in boxes while being told his move was "on hold," and his fear that he no longer had a job.  Beeney Opp. Aff. ¶ 24.

Another non-party witness, Lucy Hason, the Building Manager at his New York apartment, who works and resides in New York City will testify, *inter alia*, about the treatment and utter stress and frustration that Mr. Beeney experienced as his New York apartment lease had expired, he had no place to move.  Beeney Opp. Aff. ¶ 24.

Based on the foregoing, Defendants' arguments regarding the convenience of the witnesses are unavailing.  This factor weighs heavily in Plaintiff's favor.

### D.  Deference to Plaintiff's Choice of Forum and Plaintiff's Inferior Financial Resources Compared to Defendants' Favor this New York Forum

As amply demonstrated *supra*, Plaintiff's choice of venue is proper because New York was the actual *situs* of Mr. Beeney's employment, despite Defendants' improper antics evidencing their attempt to evade New York employment laws.  New York was the place where Plaintiff suffered the injuries giving rise to his claims.  Even considering only Defendants' activities, it is still clear that a substantial part of the events occurred in New York City because Beeney's employment relationship with Defendants developed, progressed, and then terminated in New York City.  He suffered severe emotional distress and financial damages in New York City as a direct consequence of Defendants' illegal actions.  Compl. ¶¶ 14, 17, 70, 82, 83.  Accordingly, Defendants' contacts with Plaintiff in New York justify proper venue because they were frequent and directly related to the subject matter of this litigation.

Plaintiff selected a proper forum and his financial means pale in comparison to InSightec's international, million-dollar company (Beeney Opp. Aff. ¶ 18; Harman Opp. Decl. ¶ 10 and Exhibit C), such that this Court should deny Defendants' motion to transfer.  In a venue transfer inquiry, the courts defer to the Plaintiff's choice of forum and refuse to grant a transfer

unless the other factors strongly weigh in favor of the moving party.  *See Foley*, at *3*; *800-Flowers v. Intercont'l Florist*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *G. Angel, Ltd. v. Camper & Nicholsons USA*, 06 CV 3495 (PKL), 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008).  The Southern District has given careful consideration to inequality of bargaining power between the parties, and has found that such disparity exists where an individual sues a corporation.  *See 800-Flowers*, 860 F. Supp. at 153.  That is exactly what happened here; Mr. Beeney, of modest means, sued a corporation, with substantially greater means.  *See Bayless v. Dresser Indus., Inc.*, 677 F. Supp. 195, 197, *on reconsideration*, 702 F. Supp. 79 (S.D.N.Y. 1988) (finding that the court could not disturb the plaintiff's choice of forum when doing so would cause the plaintiff hardship, considering that the plaintiff was an individual facing a multimillion dollar corporation).

As is typical in employment discrimination cases, this Plaintiff's attorneys are prosecuting Plaintiff's action on a contingency basis.  By contrast, the corporation has substantial financial resources and has an insurance policy covering defense costs.  Harman Opp. Aff. ¶ 10, Exhibits C–D.  As in *Bayless*, these factors weigh in Plaintiff's favor because he has no contacts whatsoever in Texas, and a transfer would unduly and unreasonably prejudice Mr. Beeney by forcing him to incur greater legal costs and expenses, which will jeopardize Mr. Beeney's ability to continue this lawsuit.  *Bayless*, 677 F. Supp. at 197 (denying a transfer to Texas where the plaintiff was not a resident of Texas and had no contacts in the state, on the basis that the cost to plaintiff of continuing the litigation was likely to be prohibitive).

### E.  This Forum's Familiarity with the Pertinent Law Heavily Favors Denial of a Transfer to Texas; Plaintiff's NYCHRL Claims Properly Must Be Litigated in New York

Defendants' Motion to Transfer should be denied because this Court is more familiar with the governing law, namely the NYCHRL.  Although Defendant argues that this factor carries little weight on a motion to transfer, here it strongly favors Mr. Beeney because neither Texas nor Dallas have laws prohibiting discrimination based on sexual orientation and/or

14

domestic partnership status;[11] New York City does.  The claims under NYCHRL present complex questions, which likely will prove difficult if not impossible to try in a Texas Court where no similar law exists.  "Are We Evolving on Sexual Orientation/Gender Identity Issues?" 25 No. 2 Tex. Emp. L. Letter 7, February 2014 ("At present, there is *no statewide legal prohibition* in Texas against employment discrimination on the basis of sexual orientation or gender identity") (emphasis added; copy attached).  Because Mr. Beeney worked in New York and he sued Defendants for anti-discrimination protections under local statutes, a New York court and New York City jury should preside over his claims.

### F.  Locus of Operative Facts Favors New York

To determine the locus of operative facts, courts look to where the discriminatory actions occurred.  *See Foley*, 2004 WL 35438 at *4 (denying transfer of venue in an employment discrimination case even where the defendant claimed that "no allegedly discriminatory employment-related decisions were made in the Southern District of New York; all were made . . . in telephone consultations with corporate representatives in Bolingbrook, Illinois," because the results of the defendant's discriminatory actions occurred in New York).  To focus only on where the employment decisions were made would incentivize employers to make wrongful decisions against employers in remote offices to protect themselves from litigation.  *Id*.

Here, a substantial part of the acts at the crux of the litigation took place in New York City.  Mr. Beeney received his official job offer in New York, worked for Defendants from his home office in New York City, and he incurred financial damages and suffered severe emotional distress in New York City.  Compl. ¶¶ 14, 17, 70, 82.  In fact, Mr. Beeney successfully pled that New York is a locus of operative facts while pleading a violation of the NYCHRL, which requires that the "actual impact" of the discriminatory action be felt within the City of New York.  Compl. ¶¶ 95, 109, 114.  *See Int'l Healthcare Exch. v. Global Healthcare Exch.*, 470 F.

---

[11]    To avoid unnecessary defense in Defendants' forthcoming reply, Plaintiff admits that Dallas has a simple traffic-ticket-style ordinance wherein discrimination against gays in the workplace can cause the employer to be fined no more than five hundred dollars ($500), which goes to the City of Dallas.

Supp. 2d 345 (S.D.N.Y. 2007); *see also Rohn Padmore v. LC Play*, 679 F. Supp. 2d 454, 462 (S.D.N.Y. 2010) (citing *Iwankow v. Mobil Corp.*, 150 A.D.2d 272, 274, 541 N.Y.S.2d 428, 429 (N.Y. App. Div. 1st Dep't 1989)); *Popa v. PricewaterhouseCoopers*, 08 CV 8138 (LTS)(KNF), 2009 WL 2524625, at *6 (S.D.N.Y. Aug. 14, 2009).

### G.  Trial Efficiency and Interests of Justice Favor New York

Defendants fail to advance a compelling argument regarding trial efficiency.  Courts analyze "the interest of justice, based on the totality of the circumstances." *Foley*, 2004 WL 35438 at *5.  Given that none of the other factors of the venue-transfer analysis weigh in Defendants' favor, Defendants fail to meet their burden of showing by "clear and convincing" evidence that transfer to Texas is warranted here.  By contrast, granting Defendants' obstructive motion to transfer would severely prejudice Mr. Beeney and deprive him of his right to seek redress for Defendants' egregious discriminatory actions.  As a result, this Court should deny Defendants' motion to transfer.[12]

### III.  THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

### A.  The Individual Defendants Transacted Business in New York

The Individual Defendants move to dismiss all of the claims against them for lack of personal jurisdiction.  In federal question cases, federal courts apply forum state law as to personal jurisdiction over non-domiciliaries. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05, 108 S. Ct. 404, 410 (1987); *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990).

This Court's exercise of jurisdiction over the Individual Defendants is appropriate under New York State's long-arm statute CPLR § 302(a)(1), specifically, in that they "transact[ed] . . . business within the state."  Under this section, a defendant's business transactions must entail purposeful activity in New York that bears a substantial nexus with the claim. *Agency Rent a*

---

[12]  With respect to relevant documents and other sources of proof, these are easily accessible in New York because Defendants may send information electronically. *See Foley*, 2004 WL 35438 at *4 (finding that this factor did not weigh in favor of the defendant where the defendant failed to prove that the amount of physical evidence located in its preferred forum was so overwhelming that it would be impractical and unduly burdensome). Defendants here do not even attempt to assert that they will be burdened.

*Car Sys. v. Grand Rent a Car Corp*., 98 F.3d 25 (2d Cir. 1996); *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981).  Such transactions may consist of telephone calls or other communications directed into the state.  *Parke-Bernet Galleries v. Franklin*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340 (1970); *see also Kreutter v. McFadden Oil Corp*., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43 (1988) (jurisdiction may be invoked under CPLR 302(a)(1) "even though the defendant never enters New York").  Even a single, purposeful transaction may suffice to impose jurisdiction if that transaction exhibits a substantial nexus to the cause of action.  *PDK Labs, Inc*., 103 F.3d at 1009 (citations omitted); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 456, 261 N.Y.S.2d 8, 17 (1965).  Ultimately the courts examine the totality of circumstances to determine whether activities within the state are sufficient to support personal jurisdiction.  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd*., 763 F.2d 55, 61 (2d Cir. 1985).

Here, while Mr. Beeney was employed by InSightec, he worked from his home office in New York City; Dhawan and Sokolov communicated with him there in connection with his employment.  In particular, the manner of work assignments that Plaintiff claims involved discriminatory practices were communicated and assigned to Plaintiff by these individuals via telephone, email, and videoconferences to his home office in New York City.  From early March through late May 2013, discussions concerning his complaints about the work assignments, the unreasonable and arbitrary time-frame for him to complete work assignments in his New York City apartment, the lack of guidance and information with respect to his work assignments, the inadequate and failing computer equipment sent to his New York City apartment to complete his assignments, the attempt to make it impossible for him to acquire housing in Dallas to relocate, and his notice of termination, all took place while he was working in New York City.  Beeney Opp. Aff. ¶¶ 1, 5, 8, 15.  Defendants' intentional pattern of conduct is sufficient to demonstrate the purposeful transaction of business that has a substantial nexus to Plaintiff's employment discrimination causes of action, within the meaning CPLR 302(a)(1).  *Int'l Healthcare Exch*., 470 F. Supp. 2d at 358–59 (considering non-domiciliary corporate-employee individual defendants' telephone calls, emails, faxes to plaintiff's New York City home regarding work

17

assignments that allegedly related to her claims of illegal disparate treatment as evidence of transacting business); *see also Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210 (E.D.N.Y. 1996) (considering California-based employer's communications with its employee in New York, and decision not to hire plaintiff as transacting business).  Unlike *Launer*, where only a few of the company's New York contacts were directly related to the plaintiff's discrimination action, a substantial portion of the Individual Defendants' communications to, and intentional acts directed towards, Mr. Beeney to sabotage his performance form the basis for his claims against them.  These Individual Defendants, therefore, are engaged in business transactions that are sufficient to establish a basis for this Court's exercise of personal jurisdiction under New York's long-arm statute.[13]

**B.   The Individual Defendants' Intentionally Tortious Conduct Injured Plaintiff in New York, and InSightec Derives Substantial Revenue from Interstate or International Commerce; Jurisdiction Over Individual Defendants Under CPLR § 302(a)(3)(ii) is Met**

New York law provides that "[a] court may exercise jurisdiction over a non-domiciliary . . . who in person or through an agent commits a tortious act without the state causing injury . . . within the state if he (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."  CPLR § 302(a)(3)(ii).  The facts of this case meet this standard.

The elements of finding jurisdiction under CPLR § 302(a)(3)(ii) are: (1) commission of a tort outside of New York; (2) injury to plaintiff in New York; (3) foreseeability of the consequences of the injury; and (4) defendant's derivation of substantial revenue from interstate commerce.  *Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 231 (S.D.N.Y. 1999).

---

[13]   Cases in which courts have refused to exercise long-arm jurisdiction based solely on defendants' communications generally involve isolated contacts, *e.g.*, *Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 230 (S.D.N.Y. 1999) *aff'd sub nom. Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001); or contacts unrelated to plaintiff's claims, *e.g.*, *Hutton v. Piepgras*, 451 F. Supp. 205, 208 (S.D.N.Y. 1978), or fall into an exception for non-essential contact negotiations, *e.g.*, *Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc.*, 983 F. Supp. 173, 177 (E.D.N.Y. 1997).  By contrast, here, the Individual Defendants' alleged acts were connected to Mr. Beeney's ongoing employment and underlie his discrimination claims.

## 1. Defendants' Tortious Conduct Outside New York Caused Injury to Plaintiff in New York

In determining whether a defendant committed a tortious act outside of New York that injured a person within New York, courts generally apply a "*situs*-of-injury test, which asks them to locate the original event which caused the injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (citations omitted); *accord Litton*, 2010 WL 160121 at *6. The original event occurs where the first effect of the tort, that produced the final economic injury, is located. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 85 (2d Cir. 2001); *accord Litton*, 2010 WL 160121 at *6. When a person is employed in New York (or performs a substantial part of the duties of his employment in New York), his experience of being removed from that employment (or from those duties) is a New York event that constitutes " 'the first effect of the tort' of discharging the employee." *DiStefano*, 286 F.3d at 85 (holding that the plaintiff experienced the "first effect" of losing his job in New York even though the decision to terminate the plaintiff was made outside New York) (citation omitted); *accord Litton*, 2010 WL 160121 at *8.

In this case, for approximately three (3) months, Plaintiff resided in New York and all of his employment was in New York. Beeney Opp. Aff. ¶¶ 6–16. Because Plaintiff's employment took place in New York, the "original event" (Plaintiff's termination), which allegedly caused injury to Plaintiff, occurred in New York, regardless of whether the decision to terminate him arose in Israel, Texas, or elsewhere. *Bank Brussels Lambert*, 171 F.3d at 792; *Litton*, 2010 WL 160121 at *7–8 (finding that the "original event" occurred in New York where plaintiff-employee resided in and performed a "substantial part" of his employment in New York although the he worked for a Texas-based company whose decision to terminate him allegedly based on age discrimination and retaliation allegedly arose in Texas). Accordingly, the first prong of CPLR § 302(a)(3) is met.

## 2. Defendants' Could Reasonably Expect Their Unlawful Acts to Have Consequences in New York

Jurisdiction is appropriate in this Court because Defendants should reasonably have expected their unlawful acts to have consequences in New York, and Defendants derive substantial revenue worldwide for the sale and distribution of its products and services.

The expectation element is construed to be a "foreseeability requirement" that relates to forum consequences generally, and not to the specific event which produced the injury within the state. *Roland v. Margi Sys.*, 00 CV 341(JTE), 2001 WL 241792, at *2 (W.D.N.Y. Feb. 28, 2001); *Litton*, 2010 WL 160121 at *6. Courts explore whether the defendant had reason to expect that its decision to terminate the plaintiff would have direct consequences in New York. *Roland*, 2001 WL 241792 at *3 (holding that where plaintiff used a New York telephone number for company business, defendant procured office equipment for plaintiff to work from home and plaintiff had regular contact with defendant's California headquarters when she worked in New York, defendant had reason to expect that); *Litton*, 2010 WL 160121 at *6 (where plaintiff's orders were coordinated out of Texas, he was managed out of Texas and his computer and network were based out of Texas, "there was a sufficient showing that defendant had a reason to expect that any decision made in Texas to terminate plaintiff would have direct consequences in New York"). Given the undisputed allegations in the Complaint, *inter alia*, that Defendants provided Plaintiff with the necessary equipment to perform his job duties out of his home office in New York City, they sent Plaintiff two (2) laptop computers sent to work from his New York City apartment, regularly sent him work assignments to be completed while he resided and worked in New York City, called or emailed him in New York City to manage and coordinate his work. Beeney Opp. Aff. ¶ 21. Plaintiff has sufficiently shown that Defendants had a reason to expect that any decision made in Israel, Texas, or elsewhere to terminate Plaintiff would have direct consequences in New York.

### 3. Defendants Derive Substantial Revenue from Interstate or International Commerce

Substantial revenue can mean either a substantial sum of money or that Defendants' interstate or international revenue is a substantial part of its total revenue. *Launer*, 916 F. Supp. at 211; *Litton*, 2010 WL 160121 at *7. The amount of business conducted to satisfy this standard is "less than that which is required to satisfy the conventional doing business standard." *Hollins v. U.S. Tennis Assoc.*, 469 F. Supp. 2d 67, 77 (E.D.N.Y. 2006); *accord Litton*, 2010 WL 160121 at *7. Substantial revenue cannot be measured in an absolute or relative sense or by qualitative or quantitative means. *Jin v. EBI*, 05 CV 4201 (NGG), 2006 WL 3335102, at *5 (E.D.N.Y. Oct. 17, 2006). On a motion to dismiss for lack of personal jurisdiction pursuant to CPLR § 302(a)(3), defendant has the burden of showing the absence of substantial revenue. *Ingraham v. Carroll*, 90 N.Y.2d 592, 604, 687 N.E.2d 1293, 1299 (1997); *accord Litton*, 2010 WL 160121 at *7.[14]

Defendant InSightec is a U.S.-based subsidiary of a "global leader" in non-invasive surgery technology. *See* Harman Opp. Decl., Ex. C. Furthermore, Plaintiff alleges, upon information and belief, that InSightec's revenue from interstate or international commerce is substantial.[15] *See* Beeney Opp. Aff. ¶ 18.

Based on the foregoing, Plaintiff has set forth sufficient evidence to constitute a *prima facie* showing that Defendants derived substantial revenue from interstate or international commerce within the meaning of § 302(a)(3)(ii), and has demonstrated that Defendants could or should have expected their acts to have a consequence in New York.

---

[14] The year in which the Complaint was filed is the proper point in time for determining whether defendant meets the "substantial revenue" prong of § 302(a)(3)(ii). *E.g., Litton*, 2010 WL 160121 at *7 (citing Second Circuit case law). However, courts also will consider a period of years around the time the complaint was filed. *Id.* (Second Circuit case law).

[15] As no discovery has taken place, this Court "is constrained to find, with certainty, that defendant did not derive substantial revenue from interstate or international commerce." *Drake v. Lab. Corp. of Am. Holdings*, 02 CV 1924 (FB)(RML), 2007 WL 776818, at *10 (E.D.N.Y. Mar. 13, 2007) *aff'd*, 417 F. App'x 84 (2d Cir. 2011) (denying defendant's motion to dismiss for lack of personal jurisdiction and holding that plaintiff's allegations may be sufficient to establish a *prima facie* showing of personal jurisdiction *after* discovery); *accord Litton*, 2010 WL 160121 at *8 (same)

**C.  Exercising Jurisdiction Over Individual Defendants Comports With Due Process**

This Court must also determine that this exercise of jurisdiction does not offend accepted constitutional notions of due process, which considers the adequacy of a defendant's contacts—the "minimum contacts" inquiry—within the forum state and the reasonableness and fairness of the courts exercise of power over the defendant—the "reasonableness" inquiry.  *See e.g.*, *Litton*, 2010 WL 160121 at *8 (citing second circuit district court cases).

A defendant who deliberately engages in significant activities with or creates continuing obligations to residents of the forum state may be considered to have fair warning that claims arising from such activity could subject them to jurisdiction in that forum.  *Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182 (1985); *Roland*, 2001 WL 241792, at *2 (where "defendant provided plaintiff with the infrastructure so that defendant could regularly and continuously deal with plaintiff when she worked from her home office in New York . . . defendant took purposeful action to conduct business in New York, the plaintiff established sufficient minimum contacts" in New York such that "defendant should reasonably anticipate being haled into court there") (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980)).

Here, as addressed *supra* at Point I, Defendants' misconduct was comprised of transactions that were purposefully directed toward New York, and their ongoing business activities with Mr. Beeney in New York constitute a significant portion of the activity supporting his claims, to support a preliminary finding of specific jurisdiction.  Further, the Individual Defendants do not escape this Court's exercise of jurisdiction under due process analysis solely because they are acting in their occupational capacity.  *See e.g.*, *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487 (1984).  Like the defendant in *Calder*, the Individual Defendants were "primary participants" whose effects could be felt by Plaintiff in this forum state.  *Id*.  Because it is reasonably foreseeable that misconduct in the exercise of their supervisory authority over an employee might expose them to liability in the state of employment, the Court's exercise of jurisdiction over these Individual Defendants is appropriate.

22

Courts analyze five (5) factors to access the overall reasonableness of requiring a non-domiciliary defendant to appear in a plaintiff's selected forum upon a defendant's lack of personal jurisdiction challenge. *MetLife v. Robertson-Ceco*, 84 F.3d 560, 568 (2d Cir. 1996). These are: (1) the burden that the exercise will impose on defendant; (2) the interest in the forum state in adjudicating the case; (3) the plaintiff's interest in objecting convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the state in furthering social substantive policies." *Litton*, 2010 WL 160121 at *9 (citing *Roland*, 2001 WL 241792 at *2); *see also Kernan v. Kurz-Hastings*, 175 F.3d 236, 244 (2d Cir. 1999).

As applied to the facts of this case, these considerations mandate that the exercise of personal jurisdiction is appropriate.   First, the burden inherent in forcing the Individual Defendants to defend themselves in New York is mitigated by the inevitability of the appearance of witnesses in a trial against InSightec (*see Int'l Healthcare Exch.*, 470 F. Supp. 2d at 360), and even though this Defendant is a Texas-based corporation and some of the evidence may be found in Israel, Texas, or elsewhere "the conveniences of modern communication and ease of transportation alleviate any burden to defendant of having to defendant itself in New York." *Litton*, 2010 WL 160121 at *9 (citation omitted).   With respect to the second and third factors, the interest of the forum-state adjudication is not insignificant, "as New York has a particular interest in protecting its residents under its local human rights laws" when they work in New York.   *See Int'l Healthcare Exch.*, 470 F. Supp. 2d at 360; *Litton*, 2010 WL 160121 at *9 (stating that "New York had a strong interest in adjudicating the dispute as plaintiff, a New York resident, had asserted claims based on the laws of New York and clearly, it was more convenient for the plaintiff to pursue these claims in New York").   Plaintiff's interest in obtaining convenient and effective relief is furthered by maintaining his choice of venue in New York. With respect to the fourth and fifth factors—efficient resolution of the controversy and shared

interest of the states in advancing substantive social policies, Defendants fail to raise compelling arguments addressing these issues.[16]

Accordingly, application of New York's long-arm statute comports with the Individual Defendants' due process rights.[17]

## IV.  DEFENDANT SOKOLOV WAS PROPERLY SERVED WITH PROCESS

Defendant Sokolov was properly served with the Summons and Complaint, notwithstanding Defendants' claim that he is not an employee of Defendant InSightec, but of its parent company, InSightec, Ltd., located in Israel.  Sokolov Mov. Decl. ¶ 3.  An individual may be served at his or her actual place of business.  *Id.*  The Southern District has established that the "actual place of business" is a location where the person regularly transacts business or is present with regularity.  *See Underwood v. Shukat*, 01 CV 786 (HB), 2002 WL 1315597, at *1 (S.D.N.Y. June 14, 2002) (citing *DiGiuseppe v. DiGiuseppe*, 70 Misc. 2d 188, 189, 333 N.Y.S.2d 245, 247 (N.Y. Civ. Ct. 1972)).

Here, Defendant Sokolov was Mr. Beeney's Global Clinical Applications Manager and had the power to hire and fire, supervise, discipline, and control employees of Defendant InSightec, Inc. as well as to maintain their employment records.  He in fact hired and fired Mr. Beeney.  The offices of InSightec, Inc. qualify as Defendant Sokolov actual place of business within the meaning of applicable law because Defendant Sokolov had a strong presence at InSightec, Inc., made decisions on InSightec's behalf and for the benefit of Defendant InSightec. Defendants misplace reliance on *Int'l Healthcare Exch.*, which supports Plaintiff's position that

---

[16]  While Defendants cite to *Litton v. Avomex, Inc.*, 2010 WL 160121 (N.D.N.Y. Jan. 14, 2010) in support of their motion to transfer to the Northern District of Texas, the Court in that case was compelled by the alleged 2008 statistics *at that time* that the pertinent Texas Court judges had 325 cases versus the pertinent New York Court judges with 529 cases—a difference of 204 cases—and a difference of 13.5 months to final disposition of cases in Texas versus 44 months in New York, the statistics are radically different today, and thus hardly compelling. Indeed, the caseload differential is only 34 cases in favor of Texas and only 1.5 months disposition time in favor of Texas.  Def. Opp. Mem. 21.  Moreover, even if this were about judicial caseload, there are still more judges in the Southern District of New York than in the Northern District of Texas; this flaws Defendants' apples-*v.*-oranges comparison.

[17]  Plaintiff reserves the right to argue that Defendant InSightec is liable for acts of its employees and agents under NYCHRL on this motion and in all future proceedings in, or related to, this action.

personal jurisdiction has been asserted over Defendant Sokolov under New York's long-arm statute CPLR § 302(a), clauses (1) and (3)(ii).  *See Int'l Healthcare Exch. v. Global Healthcare Exch.*, 470 F. Supp. 2d at 362.  There, as here, the plaintiff successfully established specific jurisdiction over the defendant by alleging that the "work assignments that plaintiff claims constituted instances of illegal disparate treatment were communicated and assigned to plaintiff by [defendants] . . . via telephone, email . . . to her home office in New York."  *Id.* at 359.

Finally, Defendants cannot have their cake and eat it, too.  Disingenuously, they simultaneously tell the Court that (i) Defendant Sokolov had nothing whatsoever to do with Texas, and (ii) that everything related to this case happened in Texas.

## V.       CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court dismiss Defendants' Motion in its entirety and grant Plaintiff such other and further relief as this Court deems just and proper, together with attorneys' fees and costs in connection with the opposition of Defendants' wasteful motion.

Dated: New York, New York                                  Respectfully submitted by:
      April 15, 2014

                                         THE HARMAN FIRM, PC
                                         *Counsel for Plaintiff*

                                     _____s/_____
                                       Walker G. Harman, Jr. [WH-8044]
                                       Ronnie L. Silverberg [RS-6881]
                                       1776 Broadway, Suite 2030
                                       New York, New York 10019
                                       (212) 425-2600
                                       wharman@theharmanfirm.com
                                       rsilverberg@theharmanfirm.com