# Exhibit A



FOCUS - 1 of 2 DOCUMENTS

AHAVA FOOD CORP., Plaintiff, -against-ELLEN DONNELLY, Defendant.

02 Civ. 6031 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 23731

December 9, 2002, Decided
December 11, 2002, Filed

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of personal jurisdiction granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed suit against defendant CEO of debtor corporation alleging two causes of action: (1) tortious interference with contractual relations and (2) defamation. The CEO moved pursuant to *Fed. R. Civ. P. 12(b)(2), 12(b)(3)*, and *12(b)(6)* to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a cause of action.

**OVERVIEW:** The corporation claimed that the CEO represented to many of its customers that it and a third company were the same company, that the corporation was in default under its agreement with the debtor, that it owed the debtor millions of dollars, and that payment of the corporation's bills should have been made to the debtor. The corporation alleged that jurisdiction was appropriate under *N.Y. C.P.L.R. 302(a)(2)* and *302(a)(3)(ii)*. The corporation did not allege that the CEO was physically present in the state when purportedly tortiously interfering with its contractual relations. Instead, it alleged that she contacted its customers by telephone or mail. Such communication from outside of New York into New York was not an act committed "within the state" for the purposes of *C.P.L.R. 302(a)(2)*. While the corporation alleged that it lost revenues that it would have received, it failed to specify the source or amount of these lost revenues and it could not be said that an injury was suffered within the state for the purposes of *C.P.L.R. 302(a)(3)*. Additionally, the corporation failed to allege specific facts to show that the CEO herself derived substantial income from interstate commerce.

**OUTCOME:** The CEO's motion to dismiss for lack of personal jurisdiction was granted.

**COUNSEL:** JOSEPH ZELMANOVITZ, ESQ., Of Counsel, STAHL & ZELMANOVITZ, New York, NY, for Plaintiff.

WARREN GRAHAM, ESQ., Of Counsel, DUVAL & STACHENFELD, New York, NY, for Defendant.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

Sweet, D.J.,

Defendant Ellen Donnelly ("Donnelly") has moved pursuant to *Rules 12(b)(2), 12(b)(3)* and *12(b)(6) of the Federal Rules of Civil Procedure* to dismiss the complaint of plaintiff Ahava Food Corporation ("AFC") for lack of personal jurisdiction, improper venue and failure to state a cause of action.

For the following reasons, that motion is granted.

*Facts*

As befits a motion to dismiss, the following facts are taken from the complaint and do not constitute findings of fact by the Court.

*Parties*

AFC is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Brooklyn, New York. AFC is in the business of the manufacture and production of kosher food products in New York and throughout the United States.

Donnelly is an individual who resides in Mullica Hill, New Jersey. Donnelly [*2] is the CEO of American Equities Group, Inc. ("AEG"), a company that was engaged in the business of accounts receivable factoring and financing. AEG and its affiliated companies filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). Donnelly is one of the only remaining officers who worked at AEG prior to the commencement of the bankruptcy proceedings.

In April 2001, AEG commenced an adversary proceeding against Ahava Dairy Products Corp. ("Ahava") in the Bankruptcy Court, alleging that Ahava is indebted to AEG in connection with a 1996 accounts receivable factoring agreement between Ahava and AEG. AEG has claimed that it has a security interest against, and can collect upon, Ahava's current accounts receivable. AFC believes that Ahava has no substantive assets and was evicted from its place of business on March 1, 2001.

AFC claims that Donnelly has represented to many of AFC's customers that Ahava and AFC are the same company, that AFC is in default under its agreement with AEG, that AFC owes AEG millions of dollars, and that payment of AFC's bills should be made [*3] to AEG. It also alleges that Donnelly has caused false representations to be made to the United States Postal Service that AFC is in default under an agreement with AEG and that, consequently, AEG has the right to change AFC's address and to receive AFC's customers' remittances.

AFC denies these allegations. AFC was incorporated under the laws of the State of New York in 1999, and claims that it is neither a successor in interest to, nor a subsidiary or parent of, Ahava. AFC and Ahava both use the word "Ahava" in their names, and they both serve the kosher market. Due to the failing financial situation of Ahava and its inability to pay its suppliers and maintain the supply chain to its customers, many of its customers have switched to AFC and other kosher distributors for service. Finally, AFC claims that it never had any business relationship with AEG.

According to the complaint of AFC, Donnelly's actions have seriously injured AFC's relations with its customers, who have professed confusion as to the identity of AFC because of Donnelly's representations, and remittances have been withheld from AFC without justification and Donnelly has disseminated false information for the purpose [*4] of causing injury to AFC. The complaint alleges that Donnelly has actual knowledge of AFC's business relations and contractual relations with which she has interfered, and that as a direct and proximate cause of Donnelly's tortious acts, AFC has sustained damages in excess of the jurisdictional limit of this Court, the precise amount to be determined at trial.

For the defamation cause of action, AFC alleges that Donnelly made defamatory statements to AFC's customers, including Seven Mile Market, Edelman, Lee Ave Supermarket, Alberston, C&S, Northern Metropolitan NH, *inter alia*. These customers have withheld payments to AFC or, instead have paid AEG, as a result of Donnelly's statements. AFC has been greatly injured in its character and reputation and has lost and continues to lose revenues that AFC otherwise would have received.

*Procedural Posture*

AFC commenced this lawsuit on June 28, 2001 in the District Court for the Eastern District of New York, alleging two causes of action: (1) tortious interference with contractual relations and (2) defamation. In July 2002, the case was transferred to this district and on August 30, 2002, was assigned to this Court as related [*5] to *In re American Equities*, 01 Civ. 5207.

Donnelly made the instant motion on September 9, 2002, and it was considered fully submitted on October 29, 2002.[1]

---

1 While Donnelly raised the jurisdictional issue for the first time in her reply papers, AFC was given the opportunity to respond in a surreply, and Donnelly filed a response to that surreply on October 29, 2002.

---

*Discussion*

**I. Personal Jurisdiction**

In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state. *Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)*. If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process. *Id.*

**A. Standard of Review**

The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served

Case 1:13-cv-08022-GBD   Document 28-1   Filed 04/25/14   Page 4 of 17

Page 3
2002 U.S. Dist. LEXIS 23731, *

with a *Rule 12(b)(2)* motion to dismiss. *DiStefano v. Carozzi North American Inc.,* 286 F.3d 81, 84 (2d Cir. 2001); [*6] *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994). Because an evidentiary hearing has not been held, AFC need only make a *prima facie* showing of jurisdiction through the complaint's allegations and affidavits in order to defeat the motion to dismiss. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986); *Network Enterprises, Inc. v. APBA Offshore Prods. Inc.,* 2002 U.S. Dist. LEXIS 17256, 2002 WL 31050846, at *8 (S.D.N.Y. Sept. 12, 2002).

**B.** *New York's Long-Arm Statute*

The New York long-arm statute authorizes personal jurisdiction over non-domiciliaries under several circumstances. AFC alleges that jurisdiction is appropriate under both *N.Y. C.P.L.R. § 302(a)(2)* and *302(a)(3)(ii)*.

**1. CPLR 302(a)(2)**

Section *302(a)(2)* provides for jurisdiction over a person who "commits a tortious act within the state" unless that act is one of defamation. *CPLR § 302(a)(2)*.

To obtain jurisdiction under this section, the defendant must have been physically present in New York while committing the tort. *Feathers v. McLucas,* 15 N.Y.2d 443, 459, 261 N.Y.S.2d 8 (1965); *see also Bensusan,* 126 F.3d at 29 [*7] (denying jurisdiction under *§ 302(a)(2)* where acts were performed by persons physically present in Missouri even though injury may have been suffered in New York); *Carlson v. Cuevas,* 932 F. Supp. 76, 80 (S.D.N.Y. 1996) ("To subject non-residents to New York jurisdiction under *§ 302(a)(2)*, the defendant must commit the tort while he or she is physically in New York state.").

AFC does not allege that Donnelly was physically present in the state when purportedly tortiously interfering with AFC's contractual relations.[2] Instead, it alleges that she contacted AFC's customers by telephone and/ or mail. Such communication by post or telephone from outside of New York into New York is not an act committed "within the state" for the purposes of *§ 302(a)(2)*. E.g., *Davis v. Masunaga Group, Inc.,* 204 F. Supp.2d 657, 660 (S.D.N.Y. 2002) (denying jurisdiction under *§ 302(a)(2)* where there was no evidence or allegations that allegedly tortious phone calls were made in New York), *vacated on other grounds,* 204 F. Supp.2d 665 (S.D.N.Y. 2002); *Heinfling v. Colapinto,* 946 F. Supp. 260, 264 (S.D.N.Y. 1996) ("Telephone calls placed [*8] and letters mailed from outside the state into New York do not constitute tortious acts committed 'within the state' for purposes of *§ 302(a)(2)*."); *Carlson,* 932 F. Supp. at 80 (letters mailed and calls made by defendant's agent into New York were insufficient to establish presence under *§ 302(a)(2)*); *Van Essche v. Leroy,* 692 F. Supp. 320, 324 (S.D.N.Y. 1988) (mailing of tortious letter from Texas to New York did not constitute a tort committed in New York because not mailed in New York). As a result, jurisdiction may not obtain pursuant to *§ 302(a)(2)*.

> 2   Because *§ 302(a)(2)* specifically excludes tortious acts of defamation from qualifying as bases of jurisdiction, Count II, alleging defamation, cannot be used, and jurisdiction hinges on the allegations involving tortious interference with contractual relations.

**2.** *Section 302(a)(3)(ii)*

Section *302(a)(3)(ii)* permits a court to exercise jurisdiction over a non-domiciliary who "commits a tortious act without the [*9] state causing injury to person or property within the state," if that person "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Donnelly does not contest that AFC alleges that she committed a tortious act, tortious interference with contractual relations,[3] without the state of New York. Therefore, it must be determined whether AFC has also alleged that (1) injury was suffered within New York; (2) Donnelly could expect or reasonably expect the act to have consequences in the state; and (3) Donnelly derives substantial revenue from interstate or international commerce.

> 3   Because *§ 302(a)(3)* specifically excludes tortious acts of defamation from qualifying as bases of jurisdiction, Count II, alleging defamation, cannot be used, and jurisdiction hinges on the allegations involving tortious interference with contractual relations.

In cases such as the present action involving commercial torts, "'the mere fact [*10] that the plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under *§ 302(a)(2)*.'" *Duncan v. Nu-Life, Inc. of Illinois,* 1998 U.S. Dist. LEXIS 1729, 1998 WL 66002, at *6 (S.D.N.Y. Feb. 17, 1998) (citation omitted); *see also Davis,* 204 F. Supp.2d at 660 ("An injury resulting from an out-of-state tort does not have its situs in New York merely by virtue of the fact that the injured party resides in the state and suffers pecuniary or other loss here."). AFC has failed to allege that Donnelly's actions outside the State of New York caused AFC to lose customers located in New York, or that Donnelly's out-of-state actions resulted in the sort of severe local impact contemplated by the Court in *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 435 (2d Cir. 1971) ("Perhaps the case would be different if the

discernible local impact of the commercial injury to plaintiffs were greater, *e.g.,* destruction of plaintiffs' business in New York by the loss of out-of-state customers, although we express no view as to that. But the injury here does not even approach [*11] that extreme."). While AFC alleges that it has lost and continues to lose revenues that it otherwise would have received, AFC fails to specify the source or amount of these lost revenues. As a result, it cannot be said that an injury was suffered within the state for the purposes of *§ 302(a)(3)*. Thus jurisdiction is inappropriate under *§ 302(a)(3)*.

In any case, AFC has further failed to allege specific facts to show that Donnelly, as opposed to AEG, derives substantial income from interstate commerce. AFC argues that "both [Donnelly] and AEG earned their revenue from AEG's business, which indisputably was engaged in interstate commerce." In the absence of a *prima facie* showing that AEG's acts should be attributable to Donnelly, the only pertinent revenues are those earned by Donnelly herself. *E.g., Ampa Ltd. v. Kentfield Capital LLC, 2001 U.S. Dist. LEXIS 2027, 2001 WL 204198,* at *4 (S.D.N.Y. March 1, 2001) (considering only acts of individual plaintiffs in assessing jurisdiction in absence of prima facie showing that corporate acts are attributable to individual defendants under theory of agency or alter ego relationship and thus disregarding revenues of employer in determining whether [*12] employees derived substantial revenue from interstate commerce); *Packer v. TDI Systems, Inc., 959 F. Supp. 192 (S.D.N.Y. 1997)* (determining that actions of employees only are relevant in jurisdictional inquiry in absence of showing of agency relationship). [4] To hold otherwise "would produce the intolerable result that every officer or director of a major company accused of a tort outside the state could be subject to personal jurisdiction ... without regard to the individual's own activities." *Id.* AFC has not made such a showing in the complaint or in affidavits and therefore personal jurisdiction is inappropriate under *§ 302(a)(3)* for this reason as well.

> 4 The above cases recognize, as AFC points out, that New York has rejected the fiduciary shield doctrine. The rejection of the fiduciary shield doctrine does not, however, eliminate AFC's responsibility to establish either that (1) Donnelly's own contacts with New York satisfy the long-arm statute; or (2) the Court's jurisdiction over AEG should be imputed to Donnelly. *E.g., Packer, 959 F. Supp. at 199 n.6.*

[*13] ***Conclusion***

For the foregoing reasons, Donnelly's motion to dismiss for lack of personal jurisdiction is granted.

It is so ordered.

**ROBERT W. SWEET**

**U.S.D.J.**

**December 9, 2002**

# Exhibit B



STEWART MEYERS, Plaintiff, -against- ALLSTATE INSURANCE COMPANY, Defendant.

08 Civ. 4769 (DF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2009 U.S. Dist. LEXIS 24509

March 26, 2009, Decided
March 26, 2009, Filed

**COUNSEL:** [*1] For Allstate Insurance Company, Defendant: James K. Hogan, LEAD ATTORNEY, Bruno, Gerbino & Soriano, LLP, Melville, NY.

**JUDGES:** DEBRA FREEMAN, United States Magistrate Judge.

**OPINION BY:** DEBRA FREEMAN

**OPINION**

**MEMORANDUM AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

This insurance dispute, before me on consent pursuant to 28 U.S.C. § 636, arises out of a motor vehicle accident that occurred in Connecticut. Plaintiff, Stewart Meyers ("Plaintiff"), was injured in the accident and seeks to recover under a supplemental uninsured motorist provision ("SUM Provision") in a policy that defendant, Allstate Insurance Company ("Defendant"), issued to him. Defendant now moves to transfer venue from this district to the District of Connecticut or, in the alternative, to the Northern District of New York. For the reasons discussed below, Defendant's motion (Dkt. 7) is granted, and this action shall be transferred to the District of Connecticut.

**BACKGROUND**

Plaintiff was injured when his vehicle collided with another vehicle on July 29, 2006, in Danbury, Connecticut. (Affidavit of Stewart Meyers, dated September 23, 2008 ("Pl. Aff."), at P 3, attached to Affirmation in Opposition to Motion to Remove of John A. Maher, dated [*2] Sept. 23, 2008 ("Maher Aff."); Pl. Aff. Ex. A (Accident Report, dated July 29, 2006).) At the time, Plaintiff was a Connecticut resident, and his car was registered in Connecticut. (Id.) He purchased the policy at issue in Connecticut from Defendant, an Illinois Corporation. (Affirmation in Support of Motion of James K. Hogan, dated Sept. 8, 2008 ("Hogan Aff.") Ex. C (Plaintiff's Insurance Policy); Hogan Aff., at P 14.) Soon after the accident, Plaintiff and Defendant began negotiating the amount to which Plaintiff may have been entitled under the SUM Provision. In October, 2006, during these negotiations, Plaintiff moved to New Paltz, New York, which is located in Ulster County and is within the Northern District of New York. (Pl. Aff., at P 2; Maher Aff., at P18.)

Although the parties apparently agreed that the SUM Provision was available to cover the cost of at least certain of Plaintiff's injuries, they were unable to agree as to the extent of that coverage. (See Maher Aff., at P 20.) Consequently, Plaintiff filed this action on April 1, 2008, in New York Supreme Court, Bronx County. (Hogan Aff. Ex. E (Plaintiff's Complaint, dated Apr. 1, 2008).) Defendant removed the case to this [*3] Court on May 22, 2008, based on diversity of citizenship, and the parties have since engaged in discovery. (Hogan Aff., at P 10; Reply Affirmation in Support of Motion of James K. Hogan, dated Sept. 25, 2008 ("Hogan Repl. Aff."), at P 5.)

Some time in late July, 2008, counsel for Defendant discovered a purported endorsement to Plaintiff's policy that contains a clause specifying that any litigation relating to the policy must be brought in either the state or

federal courts of Connecticut. (Hogan Aff., at PP 12-13.) Plaintiff and his counsel, however, claim that Defendant sent them certified copies of the policy three times -- twice in 2006 -- and that none of those policies contained the endorsement in question, or any a forum selection clause. (Maher Aff., at PP 8-10.) Defendant filed this motion on September 8, 2006, relying largely on the forum selection clause as a basis for its request to transfer the case. Defendant also argues that a transfer is warranted because Plaintiff was a Connecticut resident and his vehicle was registered and insured in Connecticut at the time of the accident; the surgeon who treated Plaintiff resides in Connecticut; Connecticut law governs; and this [*4] action has no connection to the Southern District of New York.

Although this Court initially deferred deciding the transfer motion while the parties were actively engaged in settlement negotiations, it now appears that a settlement will not soon be forthcoming. Accordingly, the Court has turned to the merits of Defendant's motion.

**DISCUSSION**

Even if venue is proper under *28 U.S.C. § 1441(a)*, [1] a district court may transfer a removed action to another district where it might have been brought if such a transfer is "in the interest of justice" and if the convenience of the witnesses and parties warrants transfer. *28 U.S.C. §1404(a)*. [2] The moving party bears the burden of making a clear-cut showing that a transfer is appropriate. *Liberty Mutual Fire Insurance v. Costco Wholesale Corp.*, No. 06 Civ. 5226 (PKL), 2007 U.S. Dist. LEXIS 63435, at *4 (S.D.N.Y. Aug. 27, 2007).

> 1   Venue is proper in this Court because this district embraces the New York Supreme Court, Bronx Count. *See 28 U.S.C. §1441(a)*.
> 2   Defendant purports to bring its transfer motion under *28 U.S.C. § 1447(c)* (*See* Hogan Aff., at P 27), which actually governs remanding a case to state court. Based on the relief sought and the arguments [*5] on both sides, this Court will construe this motion as a motion to transfer venue.

A motion to transfer involves a twofold inquiry. First, the Court must determine if the action "might have been brought" in the district to which the movant seeks transfer. *DealTime.com, Ltd. v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000). If so, the Court must consider whether convenience and justice favors a transfer. *Id.* Factors relevant to this analysis include: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of the circumstances. *Id.*

This action could have been brought in the District of Connecticut because the accident took place in Connecticut and Plaintiff purchased the policy there. *See 28 U.S.C. § 1391(a)*. Further, this action could have been [*6] brought in the Northern District of New York because Defendant is a resident of that district. *Id.* at § (a)(1) and (c). Thus, the Court must consider whether convenience and justice require a transfer.

As noted above, Defendant relies on a forum selection clause that was allegedly part of Plaintiff's policy. Neither Defendant nor Defendant's counsel, however, can explain why it took more than two years from the date of the accident to provide a copy of this provision to Plaintiff. Although, given Defendant's delay, this Court is inclined to find the forum selection clause ineffective, such a finding is unnecessary because, even disregarding this provision entirely, convenience and justice still warrant a transfer.

The first two factors that the Court considers in this analysis (convenience of the witnesses and parties) favor a transfer to the District of Connecticut. The surgeon who treated Plaintiff practices in Danbury, Connecticut, and Defendant suggests that a Connecticut claims adjuster may also be a witness. (*See* Hogan Repl. Aff., at P 4; Hogan Aff., at P 19.) Records from a Connecticut hospital are also relevant to this dispute, suggesting the possible need for another Connecticut [*7] witness. Although Plaintiff also visited a New York doctor (Hogan Repl. Aff., at P 4), Plaintiff has not provided this doctor's location to the Court. It also seems plausible that, to the extent Plaintiff has continued to suffer from his injury, he is being seen by one or more doctors in the New Paltz area, which is actually closer to the District of Connecticut than to this district. As for Plaintiff, his blanket assertions that he is a "New York" resident and that his counsel is located in the Bronx (Pl. Aff., at P16) fail to explain why he would rather pursue his case in this district, than in one that would require less travel for him. [3]

> 3   This Court also notes that Defendant filed this motion nearly four months after removing this action from state court and the parties have nearly completed discovery. Delay in moving to transfer, however, is only relevant if it has prejudiced the other party. *Crane v. Metro-North C. Railroad*, No. 87 Civ. 2876 (MJL), 1989 U.S. Dist. LEXIS 7094, at *6 (S.D.N.Y. Jun 26, 1989).

Case 1:13-cv-08022-GBD   Document 28-1   Filed 04/25/14   Page 9 of 17

2009 U.S. Dist. LEXIS 24509, *                                    Page 3

Here, Plaintiff does not argue that the delay has prejudiced his case.

The third factor (the location of operative facts) also favors transfer, considering that the accident [*8] occurred in Connecticut and that Plaintiff purchased the relevant policy there. The fourth factor (availability of compulsory process) does not weigh in favor of either party, as neither suggests that necessary witnesses would be outside of the subpoena power of either this Court or the other district courts in question. The fifth factor (the location of relevant documents and sources of proof) again points to Connecticut, although the parties seem to agree that the relevant documents have already been produced. The parties have made no showing that would enable the Court to analyze the sixth factor (the relative means of the parties), and the Court thus finds this factor inapplicable. As for the seventh factor (the forum's familiarity with the governing law), the parties agree that Connecticut law will govern, which further suggests that Connecticut is the more convenient venue.

Courts afford considerable weight to the eighth factor (a plaintiff's choice of forum), if either: (a) the plaintiff resides in the chosen forum; or (b) the operative facts giving rise to the action occurred there. *Ducatel v. Manspeizer.*, No. 08 Civ. 4219 (JG)(VVP), 2009 U.S. Dist. LEXIS 20314, at *9 (E.D.N.Y. Mar. 13, 2009). [*9] In this case, however, neither is true. Thus, although this factor favors denial of Defendant's motion, it need not be afforded considerable weight.

As for the ninth factor (trial efficiency), this case is not terribly complicated and the parties agree that it will only go to trial on the issue of damages. No trial has yet been scheduled, though, and it is unlikely that a transfer would result in significant delay. Finally, with regard to the tenth factor (the interest of justice), based on the totality of circumstances, it is noteworthy that this action simply bears no connection to this district, [4] and the limited resources of this Court could be better spent elsewhere. The people of Connecticut, however, have an interest in resolving disputes over Connecticut insurance policies, especially where the accident giving rise to the dispute occurred there. The Northern District of New York also has an interest in this action, albeit more attenuated, considering Plaintiff moved to that district several months after the accident.

> [4] Indeed, the only connection this Court can find is that Plaintiff's counsel is located here. "The location of counsel, however, is not a consideration in a motion [*10] to transfer venue." *Azari v. B&H Photo Video*, No. 06 Civ. 7825 (DLC), 2007 U.S. Dist. LEXIS 12, at *9 (S.D.N.Y. Jan. 3, 2007).

Overall, the relevant factors point decidedly toward the District of Connecticut as the proper venue for this action, and, based on all of the circumstances presented, this Court finds that Defendant has made a sufficient showing to warrant transfer to that district.

## CONCLUSION

For all of the foregoing reasons, it is hereby ORDERED that Defendant's motion to transfer this action (Dkt. 7) is granted. The Clerk of the Court is directed to close this case on this Court's Docket, and to transfer the case to the District of Connecticut.

Dated: New York, New York

March 26, 2009

SO ORDERED

/s/ Debra Freeman

DEBRA FREEMAN

United States Magistrate Judge

# Exhibit C



LEYAH JENSEN, Plaintiff, SIMON & SCHUSTER, INC., Defendant.

3:12-cv-00759-PK

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

2012 U.S. Dist. LEXIS 184332

December 12, 2012, Decided
December 12, 2012, Filed

**SUBSEQUENT HISTORY:** Adopted by, Motion granted by, in part, Motion denied by, in part, Dismissed without prejudice by, in part, Transfer denied by, Without prejudice *Jensen v. Simon & Schuster, Inc.,* 2013 U.S. Dist. LEXIS 4430 (D. Or., Jan. 7, 2013)

**COUNSEL:** [*1] For Leyah Jensen, Plaintiff: Karen E. Ford, Ford & Associates, Carmel, CA.

For Simon & Schuster, Inc., Defendant: Carol J. Bernick, Carol A. Noonan, LEAD ATTORNEYS, Davis Wright Tremaine, LLP, Portland, OR.

**JUDGES:** Honorable Paul Papak, United States Magistrate Judge.

**OPINION BY:** Paul Papak

**OPINION**

FINDINGS AND RECOMMENDATION

PAPAK, Judge:

Plaintiff Leyah Jensen brings this employment discrimination action against defendant Simon & Schuster, Inc. ("Simon & Schuster"), arising out of her termination from the position of Associate Art Director in March 2011. Jensen alleges claims for violations of the Americans With Disability Act (ADA), as well as for unpaid wages, expenses, advances, and royalties. Now before the court is Simon & Schuster's motion to dismiss and alternative motion to transfer venue. (#13.) For the reasons discussed below, Simon & Schuster's motion to dismiss should be granted in part and denied in part and its alternative motion to transfer venue should be denied with leave to refile.

**BACKGROUND**[1]

1   Much of the following factual recitation cannot be considered by this court on Simon & Schuster's motion to dismiss without converting the motion into a motion for summary judgment. I include it anyway to illustrate [*2] why converting the motion-to dismiss into a motion for summary judgment would still not dispose of the statute of limitations issue, and to provide background for Simon & Schuster's motion to change venue.

Jensen's *prose* complaint alleges that she was terminated on March 24, 2011 from her position as an Associate Art Director at Simon & Schuster in New York after repeatedly seeking accommodation for her disabilities of depression and Attention Deficit Disorder. (Compl., #2.) Sometime thereafter Jensen filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in Seattle, Washington.[2]

2   Jensen alleges in her complaint that she filed a charge with the EEOC on June 29, 2011, but later declared that she filed *Compare* (Compl., #2, at 4) *with* (Jensen Dec, #21, ¶2.)

In the fall of 2011, Jensen went abroad to investigate alternative treatments for her life partner who was suffering from cancer. (Jensen Dec., #21, ¶3.) She informed EEOC investigator Roxanne Zygmund by phone and voicemail that since she was out of the country, the EEOC would have to contact her via email instead of by mail to her New York address. *Id.* On November 9, 2011, Jensen emailed Zygmund confirming [*3] that she was still abroad but also stated that she would be

back in New York "very soon with full connection," as well as the ability to meet in person "any time the 16th through the 19th," presumably referring to November 16-19, 2011. *Id.*, Ex. A. Nevertheless, all of Jensen's other communication with the EEOC subsequent to the November 9 email occurred exclusively by email. *Id.* at ¶3.

Jensen requested a right-to-sue letter from the EEOC through an email sent on November 29, 2011. *Id* at ¶5, Ex. B. The New York office of the EEOC issued a right-to-sue letter on December 14, 2011 and Simon & Schuster received a courtesy copy of that letter in the mail two days later, on December 16, 2011.[3](Semel Dec., #15, ¶2, Ex. 1.) The letter bore Jensen's New York address in the upper left-hand corner of the page. *Id* Jensen, however, never received the letter or any other communications -- email or otherwise--from the EEOC during December 2011 and the majority of January 2012.[4] (Jensen Dec., #21, ¶6.) Almost a year after the EEOC issued the right-to-sue letter and six months after Jensen brought this suit, Jensen asked Zygmund whether the EEOC had any record of having sent the right-to-sue letter to [*4] her New York address. *Id.* at ¶9. Zygmund responded that "I do believe I mailed the Notice of Right to Sue to your Seattle address," although Zygmund could not be sure because the EEOC's file room had been destroyed by a flood. *Id* at Ex. E. Neither Jensen nor anyone on her behalf received a mailing from the EEOC at her Seattle address. *Id.* at ¶9.

> 3   Although not attached to the complaint, the EEOC right-to-sue letter is a matter of public record subject to judicial notice, Jensen's complaint implicitly relies on the existence of the letter, and the authenticity of the letter is not disputed. For all these reasons, the letter itself is properly considered on this motion to dismiss. *See Lee v. Los Angeles, 250 F.3d 668, 688-689 (9th Cir. 2001)* (on motion to dismiss court may take judicial notice of matters of public record and may consider documents not necessarily relied upon by the plaintiffs complaint but not physically attached whose authenticity is not contested).
>
> 4   While Jensen was out of the country and without a permanent address, she had her former roommate in New York forward mail to her. *Id.* at ¶6. The roommate assured Jensen that she never received any mail from the EEOC, and Jensen [*5] received other forwarded mail during that same period. *Id.*

After completing her travels, Jensen moved to Portland. *Id* at ¶7. On January 30, 2012, Jensen emailed EEOC investigator Zygmund, providing her new mailing address in Portland and inquiring about the status of her right-to-sue letter, stating that she had not yet received it. *Id.* at Ex. C. The same day, Zygmund wrote Jensen a letter enclosing a copy of the December 14, 2011 right-to-sue letter, stating that Jensen's case "was closed on December 14, 2011 with a Notice of Right to Sue (enclosed) ...." ."*Id.* at ¶7, Ex. D. Zygmund's letter was postmarked February 1, 2012. *Id.* Jensen received the letter on February 3, 2012. (Compl., #2, at 4.) This was the first time Jensen had received the right-to-sue letter. *Id.* at ¶7. Jensen initiated this suit on April 30, 2012, within 90 days after receiving the new copy of the original right-to-sue letter. (Compl., #2.)

**LEGAL STANDARD**

**I. Motion to Dismiss**

To survive a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. [*6] To raise a right to relief above the speculative level, "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009)*, (citing *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*. In ruling on a *Rule 12(b)(6)* motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst., 39 F.3d 222, 224 (9th Cir. 1994)*. Moreover, the "court may generally consider only 'allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)*.

**II. Motion to Transfer**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court [*7] may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. §1404(a)*. However, a party seeking transfer must make "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)*.

# DISCUSSION

## I. Motion to Dismiss

### A. Discrimination Claims--Statute of Limitations

Simon & Schuster contends that Jensen's complaint and other documents properly considered on a motion to dismiss establish that Jensen failed to commence her discrimination claim within the time required by the applicable statute of limitations. Before bringing a suit under the ADA, a plaintiff must comply with the administrative exhaustion requirements in Title VII. *See 42 U.S.C.§ 12117(a)*. Under Title VII, if the EEOC dismisses a discrimination charge, it must notify the claimant that she has ninety days to bring a civil action. *42 U.S.C. § 2000e-5(f)(1); Payan v. Aramark Mgmt. Services Ltd. P'ship, 495 F.3d 1119, 1121 (9th Cir. 2007)*. This ninety-day period operates as a limitations period such that if the claimant fails to bring suit in that time, her action is time-barred. *Id.* [*8] The period starts when the right-to-sue notice letter arrives at the claimants address of record. *Id. at 1122* (citing *Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 384 (9th Cir. 1997); Scholar v. Pac.' Bell, 963 F.2d 264, 267 (9th Cir. 1992))*. Failure to file suit within this 90-day period is an affirmative defense, on which the defendant bears the burden of proof. *Id.*

Simon & Schuster contends that the December 14 right-to-sue letter "indicates it was mailed to plaintiff's New York address," presumably because a courtesy copy of that letter received by Simon & Schuster bore Jensen's New York address in the area normally reserved for the address of the primary recipient. (D.'s Br., #14, at 5.) Additionally, Simon & Schuster describes the rule announced by the Ninth Circuit in *Payan* that when the actual date of receipt of an EEOC right-to-sue letter is unknown but receipt itself is not disputed, the letter is presumed to have been mailed on its issuance date and received three days later. *Payan, 495 F.3d at 1122-1125*. Applying *Payan* to the facts in this case, Simon & Schuster concludes that Jensen's right-to-sue letter was presumed to have been delivered on December 17, 2011, starting [*9] her 90-day window to bring suit. Since Jensen did not file suit until April 30, 2012--more than four months later-Simon & Schuster concludes that the action is time-barred.

Jensen, by contrast, contends that the 90-day limitations period did not begin until she actually received the copy of the right-to-sue letter, sent to her Portland address, in February 2012. Jensen focuses on two cases that endorse the approach taken by the Seventh Circuit, which holds that a claimant who does not receive actual knowledge of her right-to-sue letter through no fault of her own should not be penalized through application of the statute of limitations. *See Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997)* (citing *St. Louis v. Alverno College, 744 F.2d 1314, 1315, 1317 (7th Cir. 1984)); Ryan v. Joseph's Bi-Rite Market, 688 F.Supp. 573 (E.D. Ca. 1988)* (also citing *Alverno College)*. Jensen therefore asserts that she was not at fault for failing to receive the December 14 letter because she told the EEOC that she would be available only by email and had a roommate forward her mail. Additionally, Jensen attempts to distinguish *Payan*: in that case the actual date of receipt of the right-to-sue [*10] letter was unknown, whereas here Jensen actually received the letter on February 3, 2012, within 90 days of her filing. Further, Jensen argues that equitable tolling should extend the beginning of the limitations period to the date when she actually received the letter. Finally, Jensen contends that there remains a dispute of fact concerning whether she acted reasonably in failing to receive the right-to-sue letter until February 2012, which precludes application of the statute of limitations to her discrimination claims on a motion to dismiss.

There are two analytically separate issues at play concerning the statute of limitations. The first is whether the court can presume Jensen received the right-to-sue letter at her New York address soon after its December 14, 2011 issuance date, based only on the text of the letter itself. The second is whether the EEOC was even entitled to provide notice of Jensen's right-to-sue by mail in December 2011, when Jensen had earlier notified the EEOC that she wished to be contacted only through email. Because the resolution of the first issue disposes of Simon & Schuster's statute of limitations argument on this motion to dismiss, and because the [*11] resolution of the second issue requires the court to consider factual matter inappropriate for a motion to dismiss, I address only the first issue.

Simon & Schuster relies on the 3-day delivery presumption established by *Payan* to assert that the right-to-sue letter should be considered to have been actually sent and received to Jensen's New York address on December 17, 2011. However, *Payan* is inapplicable to the present dispute. *Payan* concerns only the narrow question of *when* delivery occured, rather than the question of *whether* delivery occured in the first place. In *Payan*, the Ninth Circuit reviewed the district court's grant of summary judgment on plaintiffs Title VII claim. There, plaintiff admitted that the EEOC mailed a right-to-sue letter to her address of record and that she received the letter, but plaintiff claimed not to have known when the letter actually arrived. *Id. at 1122*. On those facts, the Ninth Circuit adopted a three-day delivery presumption to determine *when* the letter arrived at the plaintiff's address of record. *Id. at 1123-1125*.

In this case, however, the parties dispute *whether* the EEOC originally mailed the December 14 letter at all, *whether* the EEOC mailed [*12] the letter to Jensen's New York address, and *whether* the letter was received there. When the fact of mailing itself is disputed, as here, courts apply the long-established "mailbox rule," not the three-day delivery presumption set out in *Payan*. *See Payan, 495 F.3d at 1123 n.4* (citing *Busquets-Ivars v. Ashcroft, 333 F.3d 1008, 1009-1010 (9th Cir. 2003)*; *Schikore v. BankAmerica Supp'l Ret't Plan, 269 F.3d 956, 963-964 (9th Cir. 2001)*). Under the mailbox rule, "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker, 111 U.S. 185, 193, 4 S. Ct. 382, 28 L. Ed. 395 (1884)*. That is, mail is presumed to have been received only if the party asserting receipt provides sufficient evidence that the letter was mailed to its intended destination. *Payan, 495 F.3d at 1123 n.4*. If established, the presumption can be rebutted by presenting sufficient evidence of non-receipt. *Schikore, 269 F.3d at 963*.

On this motion to dismiss, Simon & Schuster has not presented sufficient [*13] evidence to establish the presumption that the EEOC actually mailed the right-to-sue letter to Jensen's New York address. The only evidence of the letter being mailed to the New York address is the date of issuance and the address, both of which appear on the right-to-sue letter itself. Several courts addressing a similar issue in this circuit found such evidence to be insufficient. See *Rubalcaba v. Gucci Am., Inc.*, No. CV--12--01503--PHX--GMS, 2012 U.S. Dist. LEXIS 151334, 2012 WL 5205596, at *2 (D. Ariz. Oct. 22, 2012) (denying motion to dismiss Title VII claims where defendant's only evidence of right-to-sue letter being mailed was the date of issuance on the letter); *Turner v. Dep't of Educ.*, No. CIV. 10-00707 ACK, 2011 U.S. Dist. LEXIS 46421, 2011 WL 1637333 at *6 (D.Haw. Apr. 28, 2011) (same); *cf. Mahon v. Credit Bureau of Placer Cnty., Inc., 171 F.3d 1197, 1201-02 (9th Cir. 1999)*(presuming receipt where proponent produced evidence of company's standard business practice for mailings, including automated systems to print letters, insert them into envelopes, stamp them, and mail them). Accordingly, for the present the court must accept as true Jensen's allegation that she first received the EEOC right-to-sue letter on February 3, 2012, less [*14] than 90 days before she filed suit. Simon & Schuster's motion to dismiss should therefore be denied with respect to Jensen's discrimination claims.[5]

5 Even if this court were to convert the present motion to dismiss into a motion for summary judgment and consider the full record presented by the parties, I would still recommend denying that motion. Simon & Schuster assumes the right-to-sue letter was mailed to Jensen's New York address because the letter bears that address, although no original envelope or delivery confirmation exists. Meanwhile, Jensen asserts that her New York roommate never received the letter and presents an email from the EEOC investigator suggesting the letter was sent to Jensen in Seattle, not New York. It is clear that a factual dispute remains concerning whether the EEOC mailed the December 14 letter to Jensen's New York address. In oral argument, Simon & Schuster referenced other discovery that may be conducted relevant to the mailing issue, including deposition of EEOC staff and Jensen's roommate in New York. The court therefore anticipates that Simon & Schuster will present a summary judgment motion on the statute of limitations issue at a later date, after [*15] supplementing the current record.

### B. Non-Discrimination Claims

In addition to her disability discrimination claim, Jensen's complaint alleges two other causes of action. First, she contends that Simon & Schuster refused to pay her earned salary and reimburse her certain expenses pursuant to company policy upon her termination. (Compl., #2, at 7.) Second, Jensen alleges that Simon & Schuster failed to pay advances and royalties for three books on which she served as a photographer and illustrator "in excess of her job duties," during overtime hours. *Id.* Jensen does not describe the legal theories upon which these claims are based.

Simon & Schuster argues that Jensen's claims unrelated to discrimination fail to allege sufficient non-conclusory factual content to raise a plausible right to relief. Jensen essentially concedes that those claims are currently deficient as pled, but asks for leave to amend to state her claims with more specificity. Jensen filed her complaint in this action *pro se*. It is quite possible that the deficiencies in her claims for unpaid wages, advances, and royalties can cured through amendment. Therefore, the court should grant leave to replead those claims. *See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623-624 (9th Cir. 1988)* [*16] (a *prose* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment).

### II. Motion to Transfer

Finally, Simon & Schuster argues that this court should transfer the present action to the Southern District

of New York under *28 U.S.C. § 1404(a)*. In order to transfer venue under *Section 1404(a)*, a court must make two findings: (1) that the transferee district court is one where the action might have been brought; and (2) that the convenience of parties and witnesses in the interest of justice favor transfer. *Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985)*. Jensen concedes that this action might have been brought in the Southern District of New York. Therefore, the issue to be decided is whether the "the interest of justice" and "the convenience of the parties and witnesses" require transfer at this point in the litigation.

Before transferring pursuant to *§ 1404(a)*, the Court should consider public factors relating to "the interest of justice" and private factors relating to "the convenience of the parties and witnesses." *Decker Coal, 805 F.2d at 843*. Public factors include the [*17] administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id* Private factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*

### A. Convenience of Witnesses

Simon & Schuster first contends that the Southern District of New York is the most convenient forum because all witnesses, apart from plaintiff, are located in New York. Simon & Schuster anticipates that Jensen's co-workers, supervisor, department head, and the Human Resources Director, all of whom work for Simon & Schuster in New York, will be potential witnesses. [*18] Jensen points out that because all of these individuals are employees of defendant, there is no legitimate concern about whether they can be compelled as witnesses in Oregon. Further, the cost of obtaining attendance by those witnesses is not dispositive, since their testimony can be introduced at trial either through prerecorded video depositions or by live telephone or video link. Nevertheless, the court recognizes that a trial will be more unwieldy if the majority of witnesses appear remotely.

Simon & Schuster, however, also identifies three key non-party witnesses located in New York: the EEOC investigator Roxanne Zygmund and Jensen's New York roommate, both of whose testimony will be relevant to the statute of limitations question; and Jensen's treating physician during her employment with Simon & Schuster, presumably located in New York, whose testimony is relevant to the nature and effect of her disability and the documentation supporting her requests for accommodation. Jensen also references several non-party potential witnesses located outside of New York, such as her current treating physician, witnesses to her attempts to secure new employment after being terminated; and [*19] witnesses concerning her international travel. Jensen's current physician may offer some relevant testimony concerning Jensen's disability and current emotional distress, but I agree with Simon & Schuster that the more important medical testimony will come from the provider who treated Jensen during her employment. Witnesses concerning Jensen's subsequent efforts to find new employment may be relevant to mitigation of damages, although again I agree with Simon & Schuster that mitigation issues are unlikely to be central to the case, especially because Jensen can testify to her own job-search efforts. Finally, witnesses attesting to Jensen's international travel are unlikely to be relevant to the statute of limitations question, which will focus on whether the EEOC actually sent the December 14, 2011 letter to Jensen's New York address and, potentially, on whether the EEOC agreed to communicate with Jensen only by email. Overall, then, the convenience of non-party witnesses weighs in favor of the Southern District of New York.

### B. Location of Evidence

Both parties contend that the location of documentary evidence favors their preferred forum. Simon & Schuster notes that documents relating [*20] to Jensen's work performance and requests for accommodation are in New York, while Jensen argues that she possesses hundreds of pages of records relating to her employment, medical treatment, and subsequent work history. However, since the parties focus exclusively on documents, which are easily transported or digitized, this factor favors neither forum.

### C. Convenience of Parties

Despite Simon & Schuster's insistence to the contrary, convenience of the parties weighs against transfer. Setting aside Simon & Schuster's employee witnesses, which are discussed above, one side or the other will be forced to travel across the country for hearings, settlement conferences, and potentially for trial. Jensen argues that Simon & Schuster, a large corporation, can more easily bear the burden of this travel than she can. Simon & Schuster insists that the relative financial burden on the parties should not be considered by the court. I disagree.

Case 1:13-cv-08022-GBD   Document 28-1   Filed 04/25/14   Page 16 of 17

Page 6
2012 U.S. Dist. LEXIS 184332, *

Where a corporate defendant has "failed to demonstrate that it would be prohibitively expensive or difficult" to travel to plaintiff's chosen forum, the defendants'"assertions regarding monetary expense and difficulty alone" will not justify transfer. *See Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1073 (D. Hawaii 2000)* [*21] (denying motion to transfer venue from the District of Hawaii to the Southern District of New York despite that many witnesses were located in New York, because the large corporate defendant could more easily afford long-distance travel than could the plaintiff) (citing *Core-Vent Corp. v. Nobel industries AB, 11 F.3d 1482, 1489 (9th Cir. 1993))*. Simon & Schuster has not presented evidence that it would be prohibitively expensive to travel to this district. Moreover, as a large national corporation, Simon & Schuster is much more able to sustain the expense of traveling to litigate this matter than plaintiff. Jensen is unemployed, has been allowed to proceed in this action *in forma pauperis* because of her lack of financial resources, and attests that transfer of venue would pose a serious financial hardship and possibly prevent her from pursuing this action altogether. (Jensen Dec., #21, ¶14.) Jensen's financial circumstances here strongly counsel against transfer. *See Eberhart v. Baker, 652 F.Supp. 1475, 1476-1477 (W.D. Pa. 1987)* (denying motion to change venue where transfer might have the effect of preventing an *in forma pauperis* plaintiff from obtaining any opportunity for relief [*22] because he "may not be financially able" to pursue his claims in a different forum).

**D. Interests of Justice**

The parties mostly rehash other factors like convenience and cost under the rubric of "interest of justice," although they raise a few new arguments. Simon & Schuster contends that because Jensen's wage, expenses, advances, and royalty claims will be decided under New York law, it is in the interest of justice for a New York district court to apply familiar New York state law to those claims. *Section 1404(a)* generally favors allowing diversity cases to proceed before a court that is familiar with the governing law. *See Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)*. However, since Jensen should be given leave to replead her wage, expenses, advances, and royalty claims, it is unclear at the moment what substantive law will form the basis for evaluating those claims. If Jensen's brief on this motion is any indication, those claims will be pled under federal wage and copyright law, as well as New York law. Thus, the potential application of New York wage law favors Simon & Schuster's transfer request, but not significantly.

Simon & Schuster also contends that because this case is [*23] at a very early stage, transfer of venue would still be efficient. Courts properly consider the duration of pendency of the litigation in assessing a motion for transfer, but that factor has the most impact when litigation has already proceeded for years in the current venue. *See, e.g., Moore v. Telfon Commc'ns Corp., 589 F.2d 959, 968 (9th Cir. 1978)* (affirming denial of motion to change venue in part because the motion was made six years into the litigation). Although the short pendency of this case does not "militate against transfer," *see, e.g. Fodor v. Berg/as*, No. 94-CV-4761, 1994 WL 822477, at *5 (C.D. Cal. Dec. 27, 1994), neither does it affirmatively favor transfer.

Last, Jensen suggests that the interest of justice favors venue remaining in the District of Oregon because Simon & Schuster "has facilities here in Oregon and is registered to do business here." (P.'s Br., #20, at 16.) Jensen refers to the fact that Simon & Schuster's website requires returns to be shipped to its "Returns Department" located in Roseburg, Oregon; and that Simon & Schuster Global Services, Inc. is registered as a corporation in Oregon. (Jensen Dec., #21, ¶10, Exs. F, G.) Defendant explains that Simon [*24] & Schuster Global Services, Inc. is a completely different entity than Simon & Schuster, Inc. (the defendant in this case), and that Simon & Schuster, Inc. has no employees, officers, or other strong ties in Oregon. The extent of Simon & Schuster's contacts with Oregon is surely a matter of factual dispute inappropriate for resolution on the current record. But even if Simon & Schuster indeed has some employees in Oregon, I still agree with defendant that the controversy--Jensen's treatment in her workplace--is more closely linked to New York than Oregon. This factor therefore favors transfer as well.

Overall, the motion to transfer presents a close call. On the one hand, convenience of witnesses and interests of justice favor transfer. On the other hand, convenience of the parties supports venue remaining in the District of Oregon. Ultimately, I resolve the issue on the basis of the weight accorded to Jensen's choice of forum and the evidence adduced by defendant to disturb that choice. Simon & Schuster contends that Jensen 's choice of forum in Oregon is entitled only to minimal weight, because the events at issue in this case occured in New York and because Oregon has no particular [*25] interest in the litigation. *See Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)* ("If the operative facts have not occured within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiffs choice is entitled only to minimal consideration."). But Simon & Schuster misconstrues the holding of *Pence*. In that case, plaintiff was an Australian corporation, with no significant ties to Hawaii--it's chosen forum--except that the District of Hawaii was the most geographically proximate federal

court to its base of operations. *Id. at 955*. *Pence* simply describes the frequently recognized principle that where a plaintiff is a nonresident of the chosen forum, that choice is given significantly less weight, mainly to discourage forum shopping by plaintiffs. *See, e.g., Gemini Capital Group v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998); Roling v. E*Trade Sec., LLC, 756 F.Supp.2d 1179, 1186-1187 (N.D.Cal. 2010)*.

Here, however, Jensen is a resident of Oregon. There is no indication that she chose Oregon for any reasons other than personal convenience and financial necessity. In this instance, Simon & Schuster [*26] must make "a strong showing of inconvenience" to counteract Jensen's choice of forum. *Decker, 805 F.2d at 843*. Because Simon & Schuster has not made that showing, its motion to transfer venue should be denied.

## CONCLUSION

For the foregoing reasons, Simon & Schuster's motion to dismiss (#13) should be granted in part and denied in part. The court should grant Jensen leave to replead her claims for unpaid wages, expenses, advances and royalties. Simon & Schuster's alternative motion to transfer venue (#13) should be denied, with leave to refile at a later time.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 12th day of December, 2012.

/s/ Paul Papak

Honorable Paul Papak

United States Magistrate Judge