# Exhibit D



JOHN SMITH, PLAINTIFF v. CARL ZEISS SMT, INC, DEFENDANT

CIVIL ACTION NO. 1:05cv570 WJG-JMR

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
MISSISSIPPI, SOUTHERN DIVISION

*2006 U.S. Dist. LEXIS 60665*

**August 23, 2006, Decided**
**August 24, 2006, Filed**

**SUBSEQUENT HISTORY:** Reconsideration denied by, Stay denied by *Smith v. Carl Zeiss SMT, Inc., 2007 U.S. Dist. LEXIS 15496 (S.D. Miss., Mar. 5, 2007)*

**COUNSEL:** [*1] For John B. Smith, Plaintiff: John Wilson Eaton, III, JOHN WILSON EATON, III, ATTORNEY, Gulfport, MS; Kaye Johnson Persons, KAYE J. PERSONS, PLLC, Biloxi, MS.

For Carl Zeiss SMT, Inc., Defendant: William T. Siler, Jr., PHELPS DUNBAR, Jackson, MS.

**JUDGES:** John M. Roper, Sr., UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** John M. Roper, Sr.

**OPINION**

MEMORANDUM OPINION

This matter is before the Court upon motion of the Defendant to change venue [5-1] of this action to the United States District Court for the Southern District of New York, Division pursuant to *28 U.S.C. § 1404(a)*and *(b)*.

After due consideration of the brief of counsel, the evidence of record, the applicable law, and being otherwise fully advised in the premises, this Court finds that the motion is well-taken and should be sustained.

FACTS

Plaintiff is a resident of Stone County Mississippi and filed this matter in this Court concerning his allegations of wrongful termination and discrimination. De-

fendant is a corporation incorporated in Delaware with its principle place of business within the Southern District of New York. Plaintiff was working out of his home in Mississippi as his base but his [*2] job duties required him to traveled nationally on a frequent basis. Plaintiff is employed as a Service Engineer whose duties included maintaining and servicing microscopes of Defendant's customers who have maintenance agreements nationally. As Defendant's sole employee based in Mississippi, Plaintiff reported to individuals who worked in New York. He frequently traveled to New York as part of his employment for training seminars. He received his payroll and his benefits were administered from New York.

LAW

As an alternative to dismissing an action without prejudice under the common law doctrine of *forum non conveniens,* Congress created a means by which a district court may order a change of venue or transfer a case for the convenience of the parties and witnesses and in the interest of justice. *28 U.S.C. 1404 (1948). Section 1404* supersedes the common law doctrine of *forum non conveniens* and also broadens the discretion of the trial court from that which previously existed under the common law doctrine. In determining whether to transfer venue in a particular case, "the court must exercise its discretion in light of the particular circumstances of the [*3] case". *Hanby v. Shell Oil.,144 F. Supp. 2d 673, 2001 WL 640639, at *3 (E.D. Tex. 2001)*(citing *Radio Santa Fe v. Sena, 687 F.Supp. 284, 287 (E.D.Tex.1988)*. In doing so, the Court must balance two categories of interests (1) the so-called private interests which take into account the convenience of the litigant, and (2) the public interests, which take into account the fair and efficient administra-

tion of justice. *Hanby, 144 F. Supp. 2d 673, 2001 WL 640639, at \*3*(citing *Robertson v. Kiamichi R.R. Co., 42 F. Supp. 2d 651, 655 (E.D. Tex.1999).*

The factors utilized by the district court in making its decision under *forum non conveniens* have remained unchanged and are to be applied by the court when making a determination under *§ 1404. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); Hartford Fire Ins. Co. v. Westinghouse Elec. Corp., 725 F. Supp. 317, 321 (S.D.Miss. 1989).*

The Supreme Court explained that:

> [i]mportant considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance [\*4] of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all of the practical problems that make trial of a case easy, expeditious and inexpensive . . . The court will weigh relative advantages and obstacles to fair trial.
> . . .
>
> Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation . . . There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case. *Id*

### A. AVAILABILITY AND CONVENIENCE OF PARTY AND NON-PARTY WITNESSES

One of the most significant factors in considering a Motion to Transfer a case pursuant to *28 U.S.C. § 1404 (a)* is the convenience of the party and non-party witnesses. *Apache Prods. Co. v. Employers Ins., 154 F.R.D. 650, 653 (S.D. Miss. 1994); Sorrels Steel Co. v. Great Southwest Corp., 651 F. Supp. 623 at 629 (1986);* [\*5] *Paul v. Int'l Metals Corp., 613 F. Supp. 174, 179 (S.D.Miss. 1985).* Plaintiff, John Smith resides in Mississippi. Any non- party witnesses who would testify on his behalf would reside in the Southern District of Mississippi. These witnesses would testify about his health and

emotional distress. From his brief, he indicates his witnesses may include his wife, his daughter and his doctor. He indicates he might call other field service engineers who reside in various places across the country.

Defendant's headquarters are located in the Southern District of New York. Defendant represents that eight of ten witnesses it would call to testify in this matter reside in the Southern District of New York. Moreover, while two key witnesses, reside in Texas and California, they travel frequently to the Southern District of New York. Defendant represents that the sole non party witness it may call resides in Texas. Accordingly, The Court finds Plaintiff's choice of forum should not be heavily weighted in his favor as there are few witnesses in Mississippi and no indication that they would not appear at trial or be deposed.

### B. EASE OF ACCESS TO PROOF

In addition, the Court [\*6] finds that the Defendants' corporate records are located in its office in New York. These records would include Plaintiff's personnel records, Company's contracts with its customers and the Company's benefits policies and payroll policies. Plaintiff's records would be his medical records which will located in Mississippi. The Court finds this factor must be weighed in consideration of the transfer of this suit to New York. *Sorrels, 651 F. Supp. at 629; Paul, 613 F. Supp at 179-180.*

### C. AVAILABILITY OF COMPULSORY PROCESS

The availability of compulsory process to insure the attendance of an unwilling witnesses is an important consideration in a transfer decision. *Sorrels, 651 F. Supp. at 629; Koehring Co. v. Hyde Constr. Co, 324 F.2d 295 at 296 (5th Cir. 1963); Fullman v. AAA Cooper Transp. Corp., 732 F. Supp. 54 at 55 (N.D.Miss.1990).* Neither party has indicated there will be unwilling witnesses. Most fact witnesses will more likely be located in the Southern District of New York. This Court has considered *Rule 45 (b)(2)* of the Federal Rules of Civil and interprets [\*7] the hundred miles referenced in this Rule to be the most direct route between two points or "as the crow flies". Thus, the Southern District of New York would be the most convenient forum to litigate this matter to insure that fact witnesses would respond to compulsory process.

### D. FACTORS OF PUBLIC DIFFICULTY

#### 1. Administrative Difficulties

There is no evidence that there is a significant difference of case load between the United States District Court for the Southern District of Mississippi, Southern Division and the caseload of the United States District

2006 U.S. Dist. LEXIS 60665, *

Court for the Southern District of New York. Thus, plaintiff or defendant will not be prejudiced by having this litigation "piled up in a more congested center". *Hartford Fire Ins. Co., Supra, 725 F.Supp. at 321.*

### 2. Jury Concerns

The Plaintiff was based in Mississippi but extensively traveled for business outside of the state and the Defendant corporation's principal place of business is New York where Plaintiff was employed and the decision to terminate was made. Thus, the Court finds that the community in United States District Court for the Southern District of New York has a much closer relationship with [*8] this litigation than does the community of the Southern District of Mississippi, Southern Division. Thus, this factor of public interest leans toward allowing this matter to transfer to the United States District Court for the Southern District of New York

### F. CONCLUSION

The above captioned case was originally filed in the United States District Court for the Southern District of Mississippi, Southern Division. Consideration of the convenience of the parties and witnesses and the interest of justice require that this case be transferred from this district pursuant to *28 U.S.C. § 1404(a).* Plaintiff has demonstrated no connection with this incident and the United States District Court for the Southern District of Mississippi except his residence. Plaintiff has not presented any evidence which demonstrates plaintiff would be prejudiced if this matter is transferred to the United States District Court for the Southern District of New York.

Accordingly, it is the finding of this Court that Defendants' Motion to Transfer [-1] this case to the United States District Court for the Southern District of New York, shall be and hereby is granted.

So ORDERED AND ADJUDGED, [*9] this the 23rd day of August, 2006.

*S/ John M. Roper, Sr.*

UNITED STATES MAGISTRATE JUDGE

# Exhibit E



FOCUS - 3 of 37 DOCUMENTS

**MARK TRALONGO, Plaintiff, - against - SHULTZ FOODS, INC., Defendant.**

**06 Civ. 13282 (NRB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 23215*

**March 14, 2007, Decided**
**March 15, 2007, Filed**

**COUNSEL:** [*1] For Plaintiff: Jeffrey Kimmel, Esq., Meister Seelig & Sein LLP, New York, NY.

For Defendant: Maral N. Kazanjian, Esq., Morgan, Lewis & Bockius LLP, New York, NY; Jay R. Fries, Esq., Paul M. Lusky, Esq., Kruchko & Fries, Baltimore, MD.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION**

**MEMORANDUM AND ORDER**

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

Plaintiff Mark Tralongo ("Tralongo") brings this action against Shultz Foods, Inc. ("Shultz", "Company", or "defendant") pursuant to the Family Medical Leave Act, *29 U.S.C. § 2601 et seq.*; the New York State Human Rights Law ("NYSHRL"), *Exec. Law § 296 et seq.*; and the New York City Human Rights Law ("NYCHRL"), *Admin. Code § 8-107 et seq.*, for alleged age and disability discrimination and retaliation. Defendant, having removed this case from New York State Supreme Court, now moves to transfer this case to the Middle District of Pennsylvania. For the reasons set forth herein, defendant's motion is granted.

**BACKGROUND**

The material facts relating to the propriety of a transfer are not in dispute. Shultz, a pretzel manufacturer, [*2] is a Pennsylvania corporation with its principal place of business in Hanover, Pennsylvania. Although some of Shultz's sales are in New York State, the Company does not maintain a New York office, nor does it have any other facilities in New York. [1]

> 1 However, plaintiff claims that his New York apartment at 300 East 59<th> Street in Manhattan is listed by the Company as its "New York office." See Am. Compl. PP 1-2.

Plaintiff, a New York resident since 2005, was employed as National Sales Manager for Shultz from January 1996 until August 11, 2006, when he was demoted to Director of National Accounts. Plaintiff alleges that this demotion was a result of age and disability discrimination: in September 2005, plaintiff informed the Company that he had been diagnosed with acoustic neuroma, a benign form of brain tumor. Plaintiff underwent surgery to remove the tumor on January 19, 2006; he took medical leave through March 2006. [2]

> 2 Defendant believes he was on medical leave through April 2006. See Reply at 2. This discrepancy is of no consequence to the instant motion.

[*3] During his tenure as National Sales Manager, plaintiff lived in several cities. For the first six years, he lived in the Hanover area. In 2002, he moved to Baltimore; during this time, he regularly commuted to defendant's headquarters in Hanover. He then moved again, to New York City, his current place of residence, in the

Fall of 2005. Plaintiff nonetheless maintained an office at headquarters in Hanover until his demotion in August 2006. In his new position, plaintiff is required to travel extensively and to return to headquarters on an as-needed basis.

Later in August 2006, plaintiff notified defendant of his belief that adverse employment action had been taken against him. He demanded of Thomas Humbert in writing that defendant cease and desist from further similar actions, and that his prior position and compensation be restored. Plaintiff alleges that defendant's actions subsequent plaintiff's demand constituted retaliation. These actions included: giving plaintiff allegedly burdensome assignments; giving away plaintiff's office at corporate headquarters to Micelli; and placing plaintiff on an unwanted disability leave.

The decision to remove plaintiff from National Sales [*4] Manager was made by his supervisor, Thomas Humbert, after consultation with Buck Humbert, the Company's General Manager. Thomas Humbert is no longer employed with the company, and now resides in Texas. Buck Humbert lives in York, Pennsylvania and works at the Company's headquarters.

All of the Company's personnel decisions regarding plaintiff were made at its headquarters. Plaintiff's personnel files, as well as those of his successor as National Sales Manager, Jean Micelli, are at headquarters, as are the Company's financial records.

Plaintiff filed this suit in New York State Supreme Court on October 19, 2006, alleging that his demotion was a result of age and disability discrimination, and that defendant subsequently retaliated against plaintiff after plaintiff complained of the demotion. Defendant filed a notice of removal to this Court on November 17, 2006.

## DISCUSSION

Where the transferee district is a proper venue, as is indisputedly the case here, ³ "motions to transfer lie within the broad discretion of the court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992).* [*5] In making this determination, the courts consider the following nine factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative events; (5) the relative ease of access to sources of proof; (6) the weight afforded to plaintiffs' choice of forum; (7) the availability of process to compel the presence of unwilling witnesses; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Lewis v. C.R.I., Inc., No. 03 Civ. 651, 2003 U.S. Dist. LEXIS 6362, 2003 WL*

*1900859, at *2, (S.D.N.Y. Apr. 17, 2003); Eisenberg v. Wachovia Bank, N.A., No. 00 Civ. 7910, 2001 U.S. Dist. LEXIS 91, 2001 WL 30452, at *2, (S.D.N.Y. Jan. 11, 2001)* (citations omitted). None of the above factors is determinative, nor do they comprise an exclusive list. Rather, they serve as guideposts for analysis and should not be applied in a mechanical or formulaic manner. See *Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).* The burden of demonstrating that a transfer is warranted lies with the moving party, and a court [*6] should not disturb the plaintiff's choice of forum unless the defendant makes a "clear and convincing showing that the balance of convenience favors" a transfer. See *Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995).* For the following reasons, we find that the balance of convenience clearly favors litigating this case in the Middle District of Pennsylvania.

> 3   Plaintiff does not dispute that this action could have been brought in the Middle District of Pennsylvania. Plaintiff's Brief in Opposition to Defendant's Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* ("Opp'n") at 8.

## I. The Convenience of the Parties and Witnesses

The convenience of both the party and non-party witnesses is often considered the single most important factor in the analysis of whether a transfer should be granted under *Section 1404(a).* See *Garrel v. NYLCare Health Plans, Inc., No. 98 Civ. 9077 (BSJ), 1999 U.S. Dist. LEXIS 9778, 1999 WL 459925, at *5 (S.D.N.Y. June 29, 1999);* [*7] see also *In re Repetitive Stress Litigation, 850 F. Supp. 188, 194 (E.D.N.Y. 1994)* (convenience of the witnesses "is the most powerful factor governing the decision to transfer a case"); *Nieves v. American Airlines, 700 F. Supp. 769, 772 (S.D.N.Y. 1988).*

An examination of the facts relevant to the convenience of the parties and witnesses establishes that although plaintiff might prefer to litigate here, this factor favors transfer. Plaintiff's immediate supervisors, and all persons responsible for the relevant personnel decisions, work in Hanover, where the vast majority of defendant's business is conducted. ⁴ They would be significantly inconvenienced were they to have to testify at trial in New York City, a place that they would not otherwise regularly travel to on business. Plaintiff, by contrast, regularly travels to company headquarters.

> 4   These potential witnesses include Buck Humbert; Jean Micelli; Alesia Reese, Shultz's Manager of Human Resources; Lisa Crawford, Shultz's Inside Sales Manager; Lisa Becker,

Shultz's Production Manager; and Barbara Dutrow, Shultz's Purchasing Manager.

[*8] Plaintiff's contentions in his opposition brief about the inconvenience of witnesses from a transfer is not persuasive. First, deposition testimony from his treating physicians and therapist could be videotaped if personal appearance at trial proves impracticable. Second, the suggestion that current and former Shultz employees not living in either New York or Pennsylvania would find travel to New York less burdensome is unsupported: Tom Humbert still owns a house there, while the three Shultz sales managers living in California and Florida routinely return to headquarters for business reasons. Last, plaintiff has not offered any reason why his wife would not be able to travel with him to Pennsylvania for the trial, a distance of some 220 miles.

## II. Locus of Operative Events

The location of the operative facts is a "primary factor" in a transfer motion. *WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc., No. 00 Civ. 6558, 2001 U.S. Dist. LEXIS 16757, 2001 WL 1246592 (RCC), at *4 (S.D.N.Y. Oct. 18, 2001)* (quoting *ZPC 2000, Inc. v. The SCA Group, Inc., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000))*. Courts routinely transfer cases to the district where the principal events [*9] occurred, and where the principal witnesses are located in. *Totonelly v. Cardiology Associates of Corpus Christi, Inc., 932 F. Supp. 621, 623 (S.D.N.Y. 1996)*.

It can hardly be disputed that all of the events giving rise to this lawsuit occurred at defendant's headquarters in Hanover. These include: the decision to demote plaintiff; all meetings related to this decision; the decision to hire Micelli as plaintiff's replacement; and Human Resources' decisions relating to plaintiff's request for leave. Indeed, plaintiff himself worked for many years in Hanover at headquarters before moving to New York in 2005 which, it must not be forgotten, is the only connection this district has to the underlying claims.

Plaintiff's argument that he "suffered the effects of Shultz's discriminatory conduct in New York," Opp'n at 9, is unpersuasive. Instead, this case closely resembles *Daou v. Early Advantage, LLC, 410 F. Supp. 2d 82 (N.D.N.Y. 2006)*, a case in which suit was transferred to the District of Connecticut despite plaintiff's residence in the Northern District. Transfer was granted because plaintiff had moved to -- and began working from his home office in [*10] -- the Northern District only towards the end of his employment with the defendant, who was based in Connecticut. See *id. at 93-94.* [5]

5   Plaintiff's citations to *Foley v. Sammons Preston, Inc., No. 03 Civ. 5485 (GBD), 2004 U.S.*

*Dist. LEXIS 98, 2004 WL 35438 (S.D.N.Y. Jan. 6, 2004)* is of little value, as the alleged harassment at the heart of that case occurred in a neutral district (i.e., neither the transferor nor transferee district). See *2004 U.S. Dist. LEXIS 98, [WL] at *4.*

## III. Means of the Parties

Though plaintiff correctly argues that "there is a substantial disparity between the financial resources" of the two parties, see Opp'n at 13, this disparity is lessened by the fact that defendant would incur greater costs litigating this case in New York than plaintiff would in Pennsylvania. In this regard, it must be remembered that plaintiff is still an employee of the defendant, and part of his job responsibilities includes travel to company headquarters. We thus find that this factor neither favors nor discourages [*11] transfer.

## IV. The Plaintiff's Choice of Forum

"The plaintiff's choice of forum, while customarily a very significant factor in a 1404(a) analysis, is not entitled to the weight it is generally accorded when the forum chosen has no material connection with the action." *Invivo Research, Inc. v. Magnetic Resonance Equipment Corp., 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000)* (citing *ZPC 2000, Inc. v. SCA Group, Inc., 86 F. Supp. 2d 274, 280 (S.D.N.Y. 2000))*. Again, because this claim arose from plaintiff's employment with a Pennsylvania company for whom he worked in Pennsylvania for many years before moving to New York for unrelated reasons in 2005, we decline to give this factor much weight. [6]

6   At oral argument it was made clear that plaintiff moved to New York for two principal reasons: to begin treatments on his medical condition before it was diagnosed, and to be with his now-wife.

## CONCLUSION

For the reasons discussed above, we find that the balance of convenience [*12] clearly favors litigating this case in the Middle District of Pennsylvania. [7] Therefore, we grant defendant's motion for transfer. The Clerk of the Court is respectfully requested to forthwith transfer this case to the Middle District of Pennsylvania pursuant to *28 U.S.C. § 1404(a))*.

7   We have considered the other factors in the venue transfer analysis, but we do not discuss them because we find that they militate neither for nor against transfer. As to the eighth factor, the forum's familiarity with the governing law, we note, without deciding, that it is unclear whether defendant may be liable under the

NYSHRL and the NYCHRL. See *Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491, 505 (E.D.N.Y. 2001)* ("The [NYSHRL] does not provide a cause of action for discriminatory acts committed outside the state by a nonresident defendant"); but see *Curto v. Medical World Communications, Inc., 388 F. Supp. 2d 101, 106-07 (E.D.N.Y. 2005)* (noting that while it "is well settled that the NYSHRL does not provide a cause of action to a New York resident for discriminatory acts committed outside of New York by a foreign corporation . . . Defendants cite no precedent for their proposition that just because Plaintiff worked out of her home in New York, her work conditions were not affected within the ambit of the NYSHRL").

Moreover, we note that plaintiff's NYSHRL and NYCHRL claims are analyzed under the same framework as his Title VII claims, see, e.g., *Petrosino v. Bell Atlantic, 385 F.3d 210, 220 n.11 (2d Cir. 2004)*, though we are mindful that the NYCHRL was amended in 2005 to make clear that the law is to be "construed liberally." See *Admin. Code § 8-130*. In short, we are confident that the district court in Pennsylvania can ably interpret and apply this New York law.

[*13] **IT IS SO ORDERED.**

Dated: New York, New York

March 14, 2007

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

# Exhibit F



FEDERMAN ASSOCIATES and H.L. FEDERMAN, Plaintiffs, v. PARADIGM MEDICAL INDUSTRIES, INC., Defendant.

96 Civ. 8545 (BSJ)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1997 U.S. Dist. LEXIS 23685*

April 8, 1997, Decided
April 8, 1997, Filed

**DISPOSITION:** [*1] Defendant's motion to transfer pursuant to *28 U.S.C. § 1404(a)* granted. Court declined to rule on defendant's motions to transfer pursuant to *28 U.S.C. § 1406* and to dismiss.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, owner and investment banking company, filed a breach of contract action against defendant manufacturer. The manufacturer filed a motion for to transfer venue to a different federal district court, or in the alternative, to dismiss the action for lack of personal jurisdiction.

**OVERVIEW:** The owner and his investment banking company filed a breach of contract action against the manufacturer in a New York district court. The manufacturer filed a motion to transfer venue to a Utah district court. The court granted the manufacturer's motion transfer venue, pursuant to *28 U.S.C.S. § 1404(a)*. The court held that the case could properly have been brought in the federal court in Utah. That court could have asserted personal jurisdiction over the manufacturer, whose principal and sole place of business was in Utah. Also, a transfer to the district court in Utah best served the convenience of the parties and the witnesses. The majority of testimony was likely to be provided by witnesses residing in Utah. The manufacturer maintained its own books, records, and documents relating to the contract at its principal place of business in Utah. The written agreement was signed in Utah, and all in-person meetings between the parties took place in the manufacturer's offices in Utah. Utah, rather than New York, was the

locus of events operative to the case. Finally, transfer to Utah facilitated discovery.

**OUTCOME:** The court granted the manufacturer's motion to transfer venue in the breach of contract action filed by the owner and his investment banking company.

**COUNSEL:** For FEDERMAN ASSOCIATES, H.L. FEDERMAN, plaintiffs: Jonathan B. Altschuler, New York, NY.

**JUDGES:** Barbara S. Jones, United States District Judge.

**OPINION BY:** Barbara S. Jones

**OPINION**

**MEMORANDUM & ORDER**

Barbara S. Jones, United States District Judge:

Pending before this Court is the motion of defendant Paradigm Medical Industries, Inc., ("Paradigm"), to transfer venue to the United States Court for the District of Utah, pursuant to *28 U.S.C. §§ 1404* or *1406*. In the alternative, defendant moves to dismiss for lack of personal jurisdiction. For the reasons stated below, defendant's motion to transfer is granted, and this Court declines to rule on defendant's motion to dismiss.

*FACTUAL BACKGROUND*

In this suit for breach of contract, H.L. Federman ("Federman") [1] and his investment banking company [2]

entered into an agreement ("Letter of Understanding") with Paradigm [3] that provided that Federman would locate an underwriter to secure $ 5 [*2] to $ 8 million in capitalization for Paradigm's public offering ("the IPO"). Paradigm is a medical instrument manufacturer based and operating in Utah. Pursuant to the Letter of Understanding, Paradigm was to sell Federman Associates a five percent equity position in Paradigm for $ 25,000.

> 1   As Mr. Federman is now deceased, his estate will be formally substituted as plaintiff once letters of testamentary are issued.
> 2   The investment company is no longer in existence, as it was dissolved for failure to pay taxes.
> 3   Paradigm is a medical instrument manufacturer based and operating in Utah.

Federman now sues in diversity for breach of the Letter of Understanding, claiming that he introduced Paradigm to Kenneth Jerome & Company ("Kenneth Jerome"), a New Jersey underwriter, who became the underwriter for the IPO and raised $ 6.25 million for Paradigm. Paradigm counters that (1) the IPO was not accomplished by the date specified in the Letter of Understanding, because Kenneth Jerome was unable to perform [*3] by that time, and (2) the underwriting netted Paradigm only $ 4.7 million. Plaintiff responds that Paradigm caused the IPO's delay, by (1) allegedly failing to timely file necessary SEC documents, and (2) executing an unauthorized sale of certain preferred stock and then offering to rescind the shares ("the rescission offer").

Defendants have now moved to transfer the action to the United States Court for the District of Utah, or in the alternative, to dismiss for lack of personal jurisdiction.

*GOVERNING LAW & ANALYSIS*

Pursuant to *28 U.S.C. § 1404(a)*, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. District courts have discretion to determine when transfer is warranted "according to an individualized case-by-case consideration of convenience and fairness." *Stewart Organization, Inc v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*. The movant has the burden of establishing the propriety of such a transfer by a clear and convincing [*4] showing. *Raines v. Switch Manufacturing Corp., 1996 U.S. Dist. LEXIS 10367, 1996 WL 413720, at *1 (S.D.N.Y. July 24, 1996)*.

Determination of the propriety of transfer involves two steps. First, the court must determine whether the

case "might have been brought" in the proposed transferee district. *PI, Inc. v. Ogle, 932 F. Supp. 80, 84 (S.D.N.Y. 1996)*. Accordingly, defendants must be amenable to personal jurisdiction in the transferee district and venue must be appropriate there. *Morgan Guaranty Trust Company of NY v. Tisdale, 1996 U.S. Dist. LEXIS 14037, 1996 WL 544240, at *3 (September 25, 1996)*.

The case at bar could properly have been brought in the first instance in federal court in Utah. That court could assert personal jurisdiction over Paradigm, whose principal and sole place of business is Salt Lake City, Utah. In addition, venue would be proper under *28 U.S.C. §§ 1391(a)(1)* or *(2)*. Under *§ 1391(a)(1)*, venue is proper in a district where any defendant resides, if all defendants reside in the same state. A corporation "resides" in any district in which it is subject to personal jurisdiction when the action is commenced. *28 U.S.C. § 1391* [*5] *(c)*. Additionally, under *§ 1391(a)(2)* venue is proper in any district in which a substantial part of the events or omissions giving rise to the claim occurred.

Second -- after determining that venue could properly lie in another district -- the court may consider and balance several factors, including: (1) convenience of witnesses; (2) location of relevant documents; (3) convenience of parties; (4) locus of operative facts; (5) availability of process to compel attendance of unwilling witnesses; (6) forum's familiarity with governing law; (7) weight accorded to plaintiff's choice of forum; (8) relative means of parties; and (9) trial efficiency and interest of justice, based on the totality of circumstances. *Morgan Guaranty*, at *3. Balancing these factors is committed to the sound discretion of the district court. *See Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218*. The Court now turns to consider each of these factors in turn.

*(1) Convenience of Witnesses.*

"In most cases, the convenience of the party and non-party witnesses is the most important factor in the analysis under *§ 1404(a)*." *Morgan Guaranty*, at *3. Assessing the degree to which [*6] a transfer would inconvenience witnesses entails not merely counting the parties' prospective witnesses, but considering which are likely to provide important testimony. *Morgan Guaranty*, at *4. The important issues in the case at bar include (1) the Letter of Understanding, (2) the performance of the parties under that agreement, and (3) the performance of underwriter Kenneth Jerome.

Defendant has indicated a list of four party and 13 non-party potential witnesses. *See* Affidavit of Thomas F. Motter, dated January 29, 1997 ("Motter Aff."), P 13. Three of four party witnesses reside in Utah and work for Paradigm. Although the fourth party witness resides in New York, he commutes to and works for Paradigm in Utah. In addition, he has submitted an affidavit declaring

that Utah would be more convenient for him as a witness in the case. Affidavit of John W. Hemmer, dated February 28, 1997, P 8. Of the 13 non-party witnesses, seven live and work in Utah. They include accountants, consultants, and attorneys advising Paradigm on the IPO or recision offer. Three potential non-party witnesses live in Texas or New Mexico; while they would have to travel to either Utah or New York, Utah [*7] is certainly closer. They include an accountant and lawyer working on the IPO, and a consultant for plaintiff who worked on the Paradigm deal. Finally, only three potential non-party witnesses live or work in New York or New Jersey. The New Yorker is a Paradigm attorney who merely provided a third opinion on Paradigm's recision offer. The remaining two, from New Jersey, are Kenneth Jerome employees who negotiated and discussed the IPO.

Plaintiffs have not indicated the names of any potential witnesses. Because Federman is now deceased, plaintiffs have no party witnesses.

Because the majority of testimony -- and critical testimony -- is likely to be provided by witnesses residing in Utah or closer to Utah, the convenience of witnesses factor counsels transfer to the District of Utah.

*(2) Location of Relevant Documents and Relative Ease of Access to Sources of Proof.*

Paradigm maintains its own books, records, and documents -- relating to the IPO and to dealings with Federman -- at its principal place of business in Utah. Moreover, Paradigm's attorneys, consultants, and accountants are located in Utah and have additional documents and evidence there.

Although plaintiff argues [*8] that necessary documents or transcripts of depositions taken in Utah can be mailed to New York, this case revolves around the intent of the parties to the Letter of Understanding. Live testimony could be highly probative and determinative. Moreover, because the Court is to look at the relative ease of access to sources of proof, *Morgan Guaranty*, at *6, this factor tips in favor of the defendants.

*(3) Convenience of the Parties.*

"A transfer should not merely shift the burden of inconvenience from one party to the other." *Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994). Federman's wife, the co-executrix of Federman's estate, will be substituted as plaintiff; she is a New York resident. Defendant is a Delaware corporation, with its place of business in Utah. Regardless of the forum in which the action takes place, one party will be obligated to travel. Accordingly, this factor weighs neutrally in the instant analysis. *See Morgan Guaranty*, at *6 (declining to favor transfer where change of venue would merely shift inconvenience).

*(4) Locus of Operative Facts.*

The Letter of Understanding, an alleged breach of which gives rise to [*9] this action, was solicited, negotiated, and signed in Utah. In 1994, Federman introduced himself to Paradigm and traveled to Utah to solicit business. The written agreement was signed in Utah, and all in-person meetings between the parties took place in Paradigm's offices in Utah. Most of Paradigm's attorneys, consultants, and accountants advising on the IPO and Federman deal are in Utah.

To the extent that Paradigm's recision offer and alleged failure to timely file SEC documents becomes relevant, these acts and omissions took place in Utah; moreover, Paradigm's securities counsel and accountants are in Utah. Any other IPO activity that occurred outside of Utah occurred in connection with Kenneth Jerome, a New Jersey underwriter. [4]

> 4   As indicated at oral argument, Jerome employees traveled to Utah on several occasions.

Although plaintiff argues that Paradigm hired Federman for his financial contacts in New York, it was Federman who initially sought out Paradigm -- in Utah. Motter Aff., P 4. Moreover, Federman [*10] connected Paradigm with Kenneth Jerome, a New Jersey underwriter. While the parties communicated by telephone or mail from or to New York after execution of the Letter of Understanding, these contacts are not the "locus of operative facts." Accordingly, this factor counsels in favor of transfer to the District Court in Utah.

*(5) Subpoena Power of the Court.*

Most of the defendant's potential witnesses are not within the subpoena power of this Court. None of them, however, have submitted affidavits indicating their unwillingness to testify in a distant forum.

Although plaintiffs have not indicated any potential witnesses, presumably they will not be within the subpoena power of the Utah court. Again, there is no reason to believe that they will be unwilling to testify in a distant forum. Accordingly, this factor weighs neutrally in the transfer analysis. *See Morgan Guaranty*, at *6.

*(6) Familiarity with Governing Law.*

Because the Letter of Understanding was executed by both parties in Utah, it is likely that Utah will govern plaintiff's state law claims. Even if New York law were to govern the case, the possibility that the law of another jurisdiction governs is a factor [*11] accorded little weight on a motion to transfer, especially where no complex questions of foreign law are involved. *Leucadia Nat'l Corp. v. FPL Group Capital, Inc.*, 1993 U.S. Dist. LEXIS 15858, 1993 WL 46491, at *6 (S.D.N.Y. Novem-

ber 8, 1993). Accordingly, which forum's state law might apply is of little consequence, and this factor figures neutrally in the balancing.

(7) *Presumption in Favor Plaintiff's Choice of Forum.*

Although generally a plaintiff's choice of forum is entitled to considerable weight, that choice is accorded less weight to the degree that the case's operative facts have little or no connection with the transferor forum. *Morgan Guaranty*, at *7. As already discussed, Utah -- not New York -- is the locus of events operative to this case. For this reason, the presumption accorded to plaintiff's choice of forum must be tempered, and accordingly, plaintiff's original choice of forum will figure neutrally in the Court's balancing.

(8) *Relative Means of the Parties.*

Where a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the Court may also consider the relative means of the parties in determining whether to transfer. [*12] *Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 989 (E.D.N.Y. 1991).* A party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances. *See Morgan Guaranty*, at *6; *Lappe v. American Honda Motor Co., Inc., 857 F. Supp. 222, 230 (N.D.N.Y. 1994).*

Plaintiffs contend that a transfer would result in prohibitive expenses in relation to the recovery sought, and "might" constitute the death knell of the action. Pl. Br. p. 8. In their moving papers, however, plaintiffs submitted only an affidavit from Federman's daughter to the effect that the estate "will not have the financial resources to hire a *comparable* firm if the case is transferred. (emphasis added)" Affidavit of Ruth F. Silverstone, dated February 8, 1997, P 6 ("Silverstone Aff."). At oral argument and in supplemental papers thereafter, plaintiffs have only offered the conclusory information that the liabilities of Federman's estate exceed its assets. Affidavit of Louis Krawchick, dated April 1, 1997, P 3. No supporting documentation was offered.

In addition, at oral argument plaintiff's [*13] attorney indicated that he was working on a contingency fee basis, and would be willing to finance trips to Utah to take witness depositions, an undertaking most likely more expensive than the relatively short trial to follow.

Based on this evidence, plaintiff has not sufficiently demonstrated -- beyond mere speculation -- that transfer to federal court in Utah would be unduly burdensome. Accordingly, this factor weighs neutrally in the analysis. ⁵

> 5 Although plaintiffs point out that defendants have retained a national law firm as counsel in this matter, at oral argument defendant's counsel indicated that his firm is merely local counsel, and that Paradigm's local counsel in Salt Lake City would take over upon transfer to Utah.

(9) *Trial Efficiency and Interests of Justice.*

Given the relative early stage in this litigation and the fact that discovery is not to be completed until May 30, 1997, transfer to Utah would facilitate discovery in the district where the majority of witnesses reside, documents [*14] are located, and locus of operative facts took place. Moreover, because the locus of operative events is in Utah, New York's interest in this action is minimal. Accordingly, this factor weighs in favor of transfer.

*CONCLUSION*

A weighing of the foregoing factors indicates that the convenience of parties and witnesses would best be served by a transfer to the District of Utah, and that such a transfer would be in the interest of justice. Accordingly, defendant's motion to transfer pursuant to *28 U.S.C. § 1404(a)* is granted. In light of this disposition, the Court declines to rule on defendant's motions to transfer pursuant to *28 U.S.C. § 1406* and to dismiss. ⁶ The Clerk of the Court is directed to transfer the above-titled action to the District of Utah.

> 6 *See Kanbar v. U.S. Healthcare, Inc., 715 F. Supp. 602, 603 (S.D.N.Y. 1989); Schenck v. Walt Disney Co., 742 F. Supp. 838, 843 (S.D.N.Y. 1990).*

/s/

Barbara S. Jones

United [*15] States District Judge

Date: 4/8/97