# THE HARMAN FIRM, PC
ATTORNEYS & COUNSELORS AT LAW

1776 BROADWAY | SUITE 2030 | NEW YORK CITY 10019

TELEPHONE 212.425.2600 | FAX 212.202.3926

WWW.THEHARMANFIRM.COM

May 5, 2014

<u>VIA ECF</u>
Hon. George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

  Re: *Beeney v. InSightec, Inc., et al.*
    **13 CV 8022 (GBD) (S.D.N.Y.)**

Dear Judge Daniels:

  We are the attorneys for Plaintiff Bradley Beeney in the above-referenced action. Pursuant to Your Honor's direction at oral argument on April 29, 2014 on Defendants' Motion for Change of Venue and other relief, we hereby submit a supplemental letter brief on the issue of personal jurisdiction over Defendants Amit Sokolov ("Sokolov") and Neha Dhawan ("Dhawan") (collectively, "Individual Defendants").

  To further elaborate on settled law and undisputed facts regarding CPLR §§ 302(a)(1) and 302(a)(3)(ii) addressed in Plaintiff's Opposition at 16–24, and case law cited at oral argument, *Int'l Healthcare Exch. v. Global Healthcare Exch.*, 470 F. Supp. 2d 345 (S.D.N.Y. 2007) (Tr. 36), and as further set forth below, this Court has personal jurisdiction over the Individual Defendants.

> The Individual Defendants Are Subject to Personal Jurisdiction in This Court Pursuant to New York Long-Arm Statutes and the New York City Human Rights Law, Notwithstanding that These Defendants May Have Acted In a <u>Representative Capacity.</u>[1]

CPLR § 302(a)(1)

  *International Healthcare*, *supra*, is directly on point. There, plaintiff, a female employee, brought a gender discrimination action against her former employer corporation, her supervisor, the acting general counsel and the Vice President of Human Resources, and founding exchange companies, asserting claims for gender-based disparate treatment and retaliation in violation of Title VII, against the exchange and individuals for violations of New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), and against two individuals for aider and abettor liability under NYSHRL and NYCHRL. The Individual

---

[1] At the outset, we note that while plaintiff bears the burden of establishing jurisdiction when served with a Rule 12(b)(2) motion to dismiss, unless a court conducts a "full-blown evidentiary hearing," the plaintiff need only make "a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12 (b)(2)." *Harris v. Ware*, 04 CV 1120, 2005 WL 503935, at *2 (E.D.N.Y. Mar. 4, 2005) (quotations omitted). This means that, "prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith . . . legally sufficient allegations of jurisdiction. *Id*. at *1 (quotations and citations omitted). Plaintiff has met this standard in its opposition papers to Defendants' motion to dismiss, and as more fully set forth in this supplemental submission.

Hon. George B. Daniels
May 5, 2014
Page 2 of 6

Defendants moved to dismiss Plaintiff's claims, *inter alia*, asserting lack of personal jurisdiction over these individual defendants.

Judge Laura Taylor Swain of this Court rejected two individual defendants' lack of personal jurisdictions contentions, in view of facts alleged regarding these individual defendants' contacts with New York namely, that plaintiff worked from her home in New York City, the two individual defendants communicated with her there in connection with that employment, in particular, that work assignments the plaintiff claimed constituted instances of illegal disparate treatment were communicated and assigned to her by these individuals via telephone, email, and fax to her home office in New York, and discussions concerning her complaints about her work assignments took place through the same channels. *International Healthcare*, 470 F. Supp. 2d at 358–59.

Looking to CPLR § 302(a)(1), Judge Swain held that the foregoing facts sufficiently supported long-arm jurisdiction over these two individual defendants, stating:

> This conduct is sufficient to demonstrate purposeful transaction of business that has a substantial nexus to [p]laintiff's employment discrimination cause of action, within the meaning of section 302(a)(1) of New York's C.P.L.R. *See Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210 (E.D.N.Y. 1996) (considering California-based employer's communications with its employee in New York and decision made in California not to rehire plaintiff as evidence of transacting business). Unlike *Launer*, where only a few of the company's New York contacts were directly related to the plaintiff's discrimination action, a substantial portion of [individually-named defendants'] communications to [plaintiff] form the substantive basis for her claims against them. [The individually named defendants] thus engaged in business transactions that are sufficient to establish a basis for the Court's exercise of personal jurisdiction under New York's long-arm statute.

*International Healthcare*, 470 F. Supp. 2d at 359.[2] Judge Swain also noted the cases where, as here, the subject transactions consist of telephone calls or other communications directed into the state, and that jurisdiction may be invoked under § 302(a)(1) "even though the defendant never enters New York." *International Healthcare*, 470 F. Supp. 2d at 358 (citing among other cases, *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195 (1988)). Clearly, here, the Individual Defendants directed purposeful activity to Plaintiff in New York in the context of his employment that form the basis for his claims of discrimination based on sexual orientation and domestic partnership status. Further, and accordingly, although it is not necessary that the Individual Defendants ever "entered" New York, discovery may reveal that one or both of them have indeed done so. Plaintiff Beeney has alleged, and the Individual Defendants do not dispute, that at least one InSightec machine was sold to a hospital on Long Island. Beeney Opp. Aff. ¶ 19.

Here, as in *International Healthcare*, a substantial portion, if not all of the undisputed facts that underlie and form the basis of Plaintiff's discrimination claims specify the Individual Defendants' purposeful, discriminatory, illegal acts directed to and occurring in New York City while he worked from his New York City office and, therefore, support the exercise of long-arm jurisdiction over these Individual Defendants under CPLR § 302(a)(1) as a matter of law. As set

---

[2]   Judge Swain also distinguished those cases in which courts have declined to exercise long-arm jurisdiction based solely on defendants' telecommunications as generally involving isolated contacts. *International Healthcare*, 470 F. Supp. 2d at 359 n.7 (citing cases). Such is not the case here.

forth more fully in Plaintiff's Opposition Affidavit, ¶¶ 1, 5, 8, 15, and Plaintiff's Opposition Brief at 2–6 and 17–18, Defendants Sokolov and Dhawan, via telephone, email, and videoconferences regularly communicated with Plaintiff at his New York City office about his work assignments and, upon determining or suspecting that he may be a gay male, set unreasonable and arbitrary time-frames for him to complete work assignments in his New York City apartment, intentionally caused to be sent to him inadequate and faulty computer equipment to his New York City apartment making it very difficult at times to complete the assignments, failed to provide guidance and information for him to satisfactorily complete his assignments and, upon Plaintiff advising Defendants that he was relocating to Dallas <u>with his male domestic partner</u>, Defendants, without justification and/or rational basis, unequivocally rejected his reasonable and nearby selected housing for his move to Dallas, and subsequently terminated him by notice sent to his New York office.

Indeed, at oral argument, Defendants conceded that Individual Defendants Sokolov and Dhawan were responsible for Plaintiff's hiring, work assignments, and firing. Tr. 5–9. Defendant Dhawan admits that she "recommended his hiring," she was responsible for [his] training throughout his employment," she "gave him various assignments, including the preparation of reports and summaries of attended (and prior) fibroid treatments, the creation of Excel data tables for treated patients, reading of background materials and studies and the preparation of summaries of ongoing studies on the use and effects of Uterine Fibroid ('UF') fibroid treatments," she was responsible for "supervising" and "evaluated Mr. Beeney's performance," she "participated in the decision to terminate Mr. Beeney's employment," and "decisions regarding Mr. Beeney's employment and termination were made in Dallas and Israel." Dhawan Decl. ¶¶ 4–6, 10, 12.

Nor can Defendant Sokolov escape individual liability in this case by seeking to hide behind a "Chinese wall" of "work" in Israel. First, Defendants' counsel stated at oral argument, Defendant Sokolov, in conjunction with Defendant Dhawan, made decisions on Plaintiff's employment generally, including his being hired and fired. Tr. 4–8. Second, it is undisputed that Sokolov directed and facilitated some if not all of Plaintiff's work assignments in New York City through Defendant Dhawan. In Dhawan's absence, Sokolov directly communicated with Plaintiff regarding his work assignments in New York City, from Israel with a Hebrew keyboard came the inadequate and inoperative computer making it impossible for Plaintiff to complete assignments. Third, it is undisputed that Sokolov made the statement that "may not be politically correct," but that he "did not care." He stated that Plaintiff did not fit into InSightec's "culture" and should look for another job, and that subsequently InSightec's Israel-based HR sent Plaintiff's termination notice to New York. Beeney Opp. Aff. ¶¶ 9–16.

The Court in *International Healthcare* also rejected certain individual defendants' assertion that they were not subject to personal jurisdiction in this Court because they acted in a representative capacity for the defendant corporation. Judge Swain stated that:

> Defendants' argument that personal jurisdiction cannot be exercised over individuals for acts performed in a representative capacity is unavailing. The "fiduciary shield" doctrine is not applied in New York . . . . The Court notes in this connection that the state and local human rights laws, on which Plaintiff relies, provide for individual liability in discrimination cases where the individuals had power over personnel decisions regarding the plaintiff. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 . . . (1998) (citing *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 543–44 . . . (1984)). This situation is akin to the established exception to the fiduciary shield doctrine for corporate employees who commit a tort in the forum state. *See Kreutter*, 71 N.Y.2d at 472 . . . .

      Considering all the facts of this case, the Court finds that [individually-named defendants] are subject to personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1).

*International Healthcare*, 470 F. Supp. 2d at 359. Given Plaintiff's similarly alleged facts and law pursuant to the NYCHRL, this Court has personal jurisdiction over the Individual Defendants.

CPLR § 302(a)(3)(ii)

      Plaintiff's Opposition also set forth that the exercise of long-arm jurisdiction over the non-domiciliary Individual Defendants is appropriate pursuant to CPLR § 302(a)(3)(ii), as the Individual Defendants' tortious conduct injured Plaintiff in New York, they could reasonably expect their unlawful acts to have consequences in New York and, upon information and belief, Defendants derive substantial revenue from interstate or international commerce. Plaintiff Opp. Brief at 16–21. Indeed, as is the case here, the case law makes clear that:

> When a person is employed in New York (or performs a substantial part of the duties of his employment in New York), his experience of being removed from that employment (or from those duties) is a New York event that constitutes "the first effect of the tort" of discharging the employee. [*DiStefano v. Carozzi*, 286 F.3d 81, 85 (2d Cir. 2001)] (holding that the plaintiff experienced the "first effect" of losing his job in New York even though the decision to terminate the plaintiff was made outside New York) (citing *Bank Brussels Lambert*, 171 F.3d at 792 [(2d Cir. 1999)]).
>
> In this case, plaintiff resided in and performed a substantial part of his employment in New York. Because plaintiff's employment took place in New York, the "original event" (plaintiff's termination) which allegedly caused injury to plaintiff, occurred in New York. Accordingly, the Court finds that the first requirement of § 302(a)(3) has been satisfied.

*Litton v. Avomex, Inc.*, 2010 WL 160121, at *6–7 (N.D.N.Y. Jan. 14, 2010) (cited by both Defendants and Plaintiff in their respective briefs).

      Similarly, here, it is undisputed, and Your Honor specifically determined at oral argument, that Plaintiff resided in New York City, performed work for Defendants for three months in New York City, and was terminated by the Individual Defendants in New York City. Tr. 14–16, 27–28, 42–43, 48, 55. The Individual Defendants expected, or should have reasonably expected, that their unlawful acts—*e.g.*, the decision to terminate Plaintiff—would have direct consequences in New York. *Litton*, at *8 (where "[d]efendant concedes that plaintiff's orders were coordinated out of Texas, plaintiff was managed out of Texas and his computer and network were based out of Texas. . . . there [was] a sufficient showing that defendant had a reason to expect that any decision made in Texas to terminate plaintiff would have direct consequences in New York."); *see also Roland v. Margi*, 2001 WL 241792, at *3 (W.D.N.Y. 2001) (the plaintiff utilized a New York telephone number for company business, the defendant procured office equipment for the plaintiff to work from home and the plaintiff had regular contact with the defendant's California headquarters when she worked in New York). Accordingly, this prong of § 302(a)(3)(ii) has been satisfied.

      With respect to whether Defendant InSightec and/or the Individual Defendants' derive substantial revenue from interstate or international commerce, Plaintiff respectfully submits that he has provided a good faith basis for making this assertion, given InSightec's website page announcing that it is "global leader" in its industry, and Plaintiff's knowledge that at InSightec

sees millions of dollars in revenue. Harman Opp. Decl., ¶ 10, Exhibit C; Beeney Opp. Aff., ¶¶ 18, 27. Nor do the Individual Defendants dispute the allegations that substantial revenue is derived from interstate or international commerce. However, as there has been no discovery yet in this case, "dismissal is inappropriate even where there is no proof that a defendant "derives substantial revenue from interstate [] commerce' where that knowledge is peculiarly under the control of the defendant and may come to light in the course of subsequent discovery." *Litton*, at *8 (quoting *City of N.Y. v. A-1 Jewelry & Pawn*, 501 F. Supp. 2d 369, 418 (E.D.N.Y. 2007)) (holding that "[a]s no discovery has taken place, the Court is constrained to find, with certainty, that defendant did not derive substantial revenue from interstate or international commerce.").

> Personal Jurisdiction Over the Individual Defendants in New York Comports with Constitutional Notions of Due Process; Their Purposeful, Pervasive Conduct in New York is Consonant with Traditional Notions of Fair Play and Substantial Justice.

We understand this Court's concern that exercise of personal jurisdiction over the Individual Defendants should comport with constitutional notions of due process. *See e.g.*, Tr. 12. We also respectfully submit that given the undisputed facts set forth in the papers before the Court, as Plaintiff's Opposition Brief explains at 22–24 and as further clarified below, the Individual Defendants' purposeful, substantial, and ongoing activity in New York compels this Court's finding that personal jurisdiction comports with constitutional notions of due process, as a matter of law. In this regard, under similar facts in *International Healthcare*, Judge Swain stated:

> The Court must, however, also determine whether this assertion of jurisdiction would offend accepted constitutional notions of due process. This determination rests upon the adequacy of the defendant's contacts with the forum state and the reasonableness and fairness of the court's exercise of power over the defendant . . . . As discussed, the alleged misconduct comprised transactions that were purposefully directed toward New York, indicating a preliminary finding of specific jurisdiction. A defendant who deliberately engages in significant activities with or creates continuing obligations to residents of the forum state may be considered to have fair warning that claims arising from such activity could subject them to jurisdiction in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 . . . (1985). This is the case for [individually-named defendants], whose ongoing business activities with [plaintiff] in New York constitute a significant portion of the activity supporting [plaintiff's] claim. [Individually-named defendants] do not escape the Court's exercise of jurisdiction under the due process analysis because they were acting solely in their occupational capacity. *See Calder v. Jones*, 465 U.S. 783, 790 . . . (1984). Like the defendant in *Calder*, [individually-named defendants] were "primary participants" in activity whose effects would be felt by the [p]laintiff in the forum state. *See id*. Because it is reasonably foreseeable that misconduct in the exercise of their supervisory authority over an employee might expose them to liability in the state of employment, the Court's exercise of jurisdiction over [individually-named defendants] is appropriate.

*International Healthcare*, 470 F. Supp. 2d at 359–60.

Similarly, here, the Individual Defendants were "primary participants" in actionable misconduct felt by Plaintiff Beeney in New York City. They engaged in significant activities and created continuing obligations with Plaintiff, by hiring him and sending him work assignments in New York City for three (3) months, supervising his employment-related work in

Hon. George B. Daniels
May 5, 2014
Page 6 of 6

New York City, paying him for his services in New York City, sending him inadequate computer equipment in New York City, refusing to allow him to move to Dallas, and forcing him to live with frustration and humiliation in boxes in his New York City apartment while not knowing if he had a job, and then finally terminating him in New York City.  They cannot elude personal liability based on any alleged occupational status related to Defendant InSightec, which global enterprise does not contest personal jurisdiction in New York.  Rather, like the individual defendants in *International Healthcare* and *Calder*, it was reasonably foreseeable that the Individual Defendants' misconduct in the exercise of their supervisory authority over Plaintiff might expose them to liability in New York, and particularly in New York City.  Therefore, this Court's exercise of jurisdiction over Sokolov and Dhawan is appropriate.

In sum, the foregoing confirms and compels this Court's exercise of personal jurisdiction over the Individual Defendants.

We thank the Court for its time and attention to this matter.

Respectfully submitted,
THE HARMAN FIRM, PC


  s/  Walker G. Harman, Jr.
Walker G. Harman, Jr.



cc:     David W. Garland, Esq. (via ECF)
        Ronnie L. Silverberg (via ECF)